## STATE v. RONALD JOHN HOLMES.

161 N. W. (2d) 650.

September 6, 1968—No. 40,430.

*C. Paul Jones,* State Public Defender, and *John L. Tambornino,* for appellant.

*Douglas M. Head,* Attorney General, *Robert W. Johnson,* County Attorney, and *G. D. Giancola,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

This is an appeal from a conviction in 1966 for aggravated robbery, Minn. St. 609.245, for which defendant has been sentenced to a term not to exceed 20 years in prison, to run consecutively with a prior sentence in 1960 of not to exceed 10 years for the crime of receiving stolen property. In 1964 defendant was convicted of the same robbery and was sentenced to the same term except that the sentences were to run concurrently. The first robbery conviction was reversed and a new trial granted in State v. Holmes, 273 Minn. 223, 140 N. W. (2d) 610. The details of the offense are set forth in that opinion and need not be repeated here.

Five issues are raised by the appeal: (1) Whether the court abused its discretion in denying a continuance to permit defendant to locate two alibi witnesses; (2) whether it was error to permit witnesses for the state to refresh their memories by use of transcripts of the prior trial and to examine a photograph of the defendant for purposes of identification; (3) whether defendant was denied a fair trial because one of the state's witnesses acknowledged only four out of five prior felony convictions; (4) whether defendant was denied a fair trial because, as he alleges, one of his witnesses was searched for weapons in open court and in full view of the jury; and (5) whether it was error to impose a longer sentence after the second trial than that which was imposed at the first trial.

We have considered all of defendant's claims and find no merit in any of them except that which deals with the length of his sentence.

■ There was ample time to search for the missing witnesses, and notice of their unavailability was not timely. The testimony of one of them given at the prior trial was, in fact, read to the jury. The question of granting a continuance is one which is within the discretion of the trial court and we find no abuse of that discretion in these circumstances.

■ Nor was there any impropriety in permitting witnesses to refresh their memories by use of transcripts of the testimony they gave at a prior trial or to view defendant's photograph.

■ The number of felony convictions of the state's witness, even if established, was a discrepancy of such a trivial nature we do not deem it worthy of further discussion.

■ Defendant's trial attorney alleges by affidavit that one of defendant's witnesses was searched for weapons in the presence of the jury. Defendant asserts he was thereby prejudiced because the search implied that the witness was a "hoodlum" and it tended to impeach his testimony. The suggestion his witness was armed had a tendency to corroborate the state's charge that this offense was committed with a deadly weapon, so defendant argues.

While it may well be that a search conducted in open court in the presence of the jury is prejudicial, no record of the incident was made by counsel at the trial, and all of the jurors as well as the court have, by affidavit, asserted that if the incident occurred it was not observed by any of them. The bailiffs in charge of the jury denied that the search took place. The court's version of the alleged impropriety is fully supported by these affidavits and we therefore find no merit in this assignment of error.

■ A more difficult question is presented by the imposition of a longer sentence for the second conviction than for the first after a new trial for the same offense. Defendant was convicted of a wholly unrelated offense on April 20, 1960, when he began serving a term not to exceed 10 years. The first robbery trial resulted in a sentence of up to 20 years imposed on March 6, 1964, which would have expired on November 2, 1977, with credit for "good time," since it ran *concurrently* with the prior 10-year sentence. After the new trial, on April 22, 1966, sentence was again imposed to run *consecutively* with the prior 10-year sentence but with credit for the period from March 6, 1964, when his first robbery term began to run, until April 22, 1966, when the second sentence was imposed. With "good time" the present sentence is due to expire December 28, 1978. Hence, the new trial resulted in extending defendant's term 1 year, 1 month, and 26 days.

We are now faced squarely with the question of whether it is proper for the court to impose on a defendant who has secured a new trial a sentence more onerous than the one he initially received. We hold that as a matter of judicial policy such a sentence is improper.

Until recently, few courts have come to grips with this issue. The United States Supreme Court disposed of the same question somewhat

summarily in Stroud v. United States, 251 U. S. 15, 40 S. Ct. 50, 64 L. ed. 103. There the defendant was convicted of murder and, on the recommendation of the jury, was given a life sentence. On appeal the conviction was reversed and he was retried. The second jury also convicted defendant but without a recommendation of leniency. He was thereupon sentenced to death. The Supreme Court brushed aside his claim of double jeopardy, observing only that the defendant himself had invoked the action which ultimately resulted in a more severe punishment. A number of other courts have seized on this approach to suggest that a defendant who has been wrongfully convicted must take the bitter with the sweet if he sees fit to invoke his right to a trial free from prejudicial error.

In Hobbs v. State, 231 Md. 533, 191 A. (2d) 238, the Maryland court approved *consecutive* 20-year and 5-year sentences imposed on a defendant who was retried after a prior conviction which had resulted in three *concurrent* 20-year sentences. The court answered defendant's contention that the second sentence was cruel and unusual punishment by stating (231 Md. 536, 191 A. [2d] 240): "In asking for and receiving a new trial, appellant must accept the hazards as well as the benefits resulting therefrom." Subsequently, the Maryland court backed away from the harshness of the Hobbs case by holding that the second sentence cannot result in confinement for a single offense which exceeds the statutory maximum where no credit is given for time served under the first sentence, saying in Reeves v. State, 3 Md. App. 195, 204, 238 A. (2d) 307, 313:

"* * * Thus, the limiting factor is clear — a sentence must be imposed within the statutory limit and to say that because, as here, the second sentence, *per se*, did not exceed the maximum, is to take a myopic view of its results, which we cannot accept if fundamental fairness is to prevail."

Georgia has resisted the claim that harsher punishment upon a retrial is in violation of the Fourteenth Amendment by holding in Salisbury v. Grimes, 223 Ga. 776, 778, 158 S. E. (2d) 412, 414:

"* * * When appellant was granted a new trial, it wiped the slate clean as if no previous conviction and sentence had existed. In electing

to have his case retried, appellant must have contemplated the possibility of having the jury impose a harsher sentence if he were convicted again."

Notwithstanding the fact that the United States District Court had held in Patton v. State (W. D. N. C.) 256 F. Supp. 225,[1] that the North Carolina practice of imposing the same sentence on a second trial, without credit for the period of confinement under the first sentence, was a violation of the Fourteenth Amendment, the Supreme Court of North Carolina chose to ignore the decision of the Federal court and adhered to its former decisions permitting an increase in the penalty "[i]f a sentence is set aside on a defendant's application." State v. Pearce, 268 N. C. 707, 708, 151 S. E. (2d) 571, 572. In a later case, State v. Paige, 272 N. C. 417, 158 S. E. (2d) 522, the court approved a second sentence which was longer than the first but gave defendant credit for the time he served under the first conviction. Again the court took notice of the decision of the United States Court of Appeals which reversed the Patton conviction but simply observed that the North Carolina attorney general had petitioned the United States Supreme Court for a writ of certiorari in that matter.

The United States Courts of Appeal have taken three different approaches, one being that expressed in the state decisions cited. The second approach is that the subsequent sentence may not be increased unless the court assigns valid reasons for so doing to obviate the suggestion defendant is being penalized for asserting his right to an appeal. The third approach, and the one which we adopt, precludes inquiry into the motives of the sentencing judge and holds as a matter of law that any increase in penalty upon a retrial inevitably discourages a convicted defendant from exercising his legal rights and is contrary to public policy. Except for convictions resulting from Federal offenses, the Federal courts have been obliged to base their decisions on constitutional grounds, which we find unnecessary to do.

Two decisions approving longer sentences on retrial or failing to give

---

[1] Affirmed on appeal in Patton v. State (4 Cir.) 381 F. (2d) 636.

credit for time previously served are Newman v. Rodriguez (10 Cir.) 375 F. (2d) 712, and United States ex rel. Starner v. Russell (3 Cir.) 378 F. (2d) 808. In the Starner case (378 F. [2d] 811) the court again used the expression "the slate had been wiped clean" when defendant was resentenced after successfully setting aside a plea of guilty and standing trial. A more severe sentence was approved on the theory that the second trial judge was in a better position to weigh and evaluate the defendant's record after a trial than was the first judge who accepted a plea of guilty. The court refused to attribute to the second judge the "base motive" of penalizing defendant for taking an appeal which it characterized as "conduct unworthy of the name of judge." As a further justification for the longer sentence, the court concluded by observing that "leniency is always extended on pleas of guilty that is not extended when defendants go to trial * * *."

A number of courts have permitted a longer sentence on retrial if the sentencing judge specifies valid reasons for the more severe penalty. In Marano v. United States (1 Cir.) 374 F. (2d) 583, the court disapproved an increased penalty on a retrial but noted by way of dictum that it would not be inappropriate for the court to take into consideration events, revealed in a presentence report, which had occurred subsequent to the prior conviction. It was suggested in a footnote that grounds for the increased sentence should be made to appear affirmatively in the record. This was also the position of the trial court in Patton v. State (W. D. N. C.) 256 F. Supp. 225. The Court of Appeals in United States v. White (7 Cir.) 382 F. (2d) 445, with one judge dissenting, held that an increased sentence is valid on a retrial if the circumstances disclosed in a presentence report warrant it, but declined to require that the sentencing judge disclose the reasons for the greater penalty.

The rationale which is to us more persuasive has been well expressed in decisions of the Fourth Circuit and the Supreme Courts of New Jersey, California, and Oregon. In Patton v. State (4 Cir.) 381 F. (2d) 636, Judge Sobeloff in a comprehensive and learned opinion condemned the North Carolina rule referred to above. North Carolina had rationalized its failure to give a prisoner credit for time served under an invalid sen-

tence by holding that the prisoner "in seeking and obtaining a new trial must be deemed to have consented to a wiping out of all the consequences of the first trial." State v. White, 262 N. C. 52, 56, 136 S. E. (2d) 205, 208. In answer to this "Draconian doctrine" Judge Sobeloff observed (381 F. [2d] 639): "It is grossly unfair for society to take five years of a man's life and then say, we now acknowledge that this should not have happened, but we will set everything right by refusing to recognize that it did happen. This is an unworthy pretense. Courts should not be astute to fashion legal fictions to attain unjust ends." To follow the North Carolina rule, the court said, would confront the prisoner with the unhappy choice of either abandoning his constitutional right to a fair trial and serving out his prison term under the invalid sentence, or exercising that right under the hazard of being treated as though the years of imprisonment had never occurred. "North Carolina deprives the accused of the constitutional right to a fair trial, then dares him to assert his right by threatening him with the risk of a longer sentence." 381 F. (2d) 640. Finally, Judge Sobeloff concludes that it is impossible for a prisoner to prove the court's motivation in imposing a longer sentence on retrial, and it is equally distasteful for Federal courts to pry into the question of whether "vindictiveness played a part. * * * [I]mproper motivation is characteristically a force of low visibility. In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old." 381 F. (2d) 641. As to the argument that increased penalties discourage insubstantial appeals, Judge Sobeloff pointed out that, ironically, those whom the state admits were denied a fair trial are the only ones who stand to receive greater punishment.

In somewhat unique pretrial proceedings, a defendant sentenced to life imprisonment secured from the Supreme Court of New Jersey a decision that if he were retried, his conviction having been reversed, the death penalty could not be imposed upon his being convicted a second time. The court grounded its decision, as do we, on procedural fairness and principles of public policy rather than on a constitutional ground, holding that the defendant should not run the risk, by appealing an error-ridden conviction, of again putting his life in jeopardy. State v. Wolf,

46 N. J. 301, 216 A. (2d) 586, 12 A. L. R. (3d) 970.[2] In both capital and noncapital cases, California has also adopted a rule which forbids a greater penalty on a retrial. People v. Henderson, 60 Cal. (2d) 482, 35 Cal. Rptr. 77, 386 P. (2d) 677; People v. Ali, 66 Cal. (2d) 277, 57 Cal. Rptr. 348, 424 P. (2d) 932.

All of the cases are discussed in a comprehensive opinion recently handed down by the Oregon Supreme Court in State v. Turner, 247 Ore. 301, 429 P. (2d) 565. There the court disposed of the argument that a more severe penalty is justified where the court initially was unaware of a prior conviction or the prisoner has been guilty of misconduct subsequent to his original confinement. In the former situation, the court said the problem could be met by filing the prior information to bring the defendant under the habitual criminal statutes, a solution which we expressly decline to approve. In the latter situation, the court pointed out that an increased penalty was not necessary since the prison officials themselves had authority to deny the prisoner "good time" as an appropriate corrective measure. As in the case of the New Jersey decision, the Oregon court based its conclusion on considerations of procedural policy rather than on a constitutional ground.

In Green v. United States, 355 U. S. 184, 78 S. Ct. 221, 2 L. ed. (2d) 199, 61 A. L. R. (2d) 1119, the defendant was initially charged with arson and first-degree murder but was found guilty only of arson and second-degree murder. On appeal his conviction was reversed and over his objection he was again tried for murder in the first degree. The second jury found him guilty and he was sentenced to death. The Supreme Court held the second trial for murder in the first degree violated the double jeopardy provisions of the Fifth Amendment, stating (355 U. S. 193, 78 S. Ct. 226, 2 L. ed. [2d] 207, 61 A. L. R. [2d] 1127):

"* * * [T]he Government contends that * * * [defendant] must be willing to barter his constitutional protection against a second prosecu-

---

[2] See, also, Annotation, 12 A. L. R. (3d) 978; State v. White, 262 N. C. 52, 136 S. E. (2d) 205, certiorari denied, 379 U. S. 1005, 85 S. Ct. 726, 13 L. ed. (2d) 707; 1965 Duke L. J. 395, 396; Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant,* 74 Yale L. J. 606; 80 Harv. L. Rev. 891.

tion for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty years' imprisonment. As the Court of Appeals said in its first opinion in this case, a defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma."

In a footnote it observed that the Stroud case was "clearly distinguishable." 355 U. S. 195, 78 S. Ct. 227, 2 L. ed. (2d) 208, 61 A. L. R. (2d) 1128. Later, in Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837, the question arose as to whether the Federal court could take jurisdiction to review a state conviction many years after the defendant's time to appeal to the state court had elapsed. Mr. Justice Brennan pointed out that defendant had received a life sentence upon a conviction for a capital offense (372 U. S. 439, 83 S. Ct. 849, 9 L. ed. [2d] 870):

"* * * For Noia to have appealed in 1942 would have been to run a substantial risk of electrocution. His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence. See, *e. g., Palko v. Connecticut*, 302 U. S. 319 [58 S. Ct. 149, 82 L. ed. 288]. He declined to play Russian roulette in this fashion."

The conclusion we here reach is in harmony with the rule recommended by the Advisory Committee on Sentencing and Review, A. B. A. Project on Minimum Standards for Criminal Justice, in Standards Relating to Post-Conviction Remedies (tentative draft), and approved by the House of Delegates of the American Bar Association. Section 6.3(a) provides as follows:

"Where prosecution is initiated or resumed against an applicant who has successfully sought post-conviction relief and a conviction is obtained, or where a sentence has been set aside as the result of a successful application for post-conviction relief and the defendant is to be re-sentenced, the sentencing court should not be empowered to impose a more severe penalty than that originally imposed."

In rejecting the view that courts may sometimes have additional information not available to the first sentencing judge, the advisory committee observed (Commentary, Standards Relating to Post-Conviction Remedies [tentative draft], p. 96):

"* * * Even though new facts may be brought to light which might occasionally warrant a heavier sentence, the Advisory Committee believes it is preferable to establish a standard that is prophylactic in effect, and easily administered, whereby sentencing judges are not given power to increase a sentence when an applicant has exercised his right to seek a post-conviction remedy. This takes the matter out of the discretion of the sentencing judge."

We share the views of the advisory committee and the concern expressed by Judge Sobeloff in the Patton case. Appellate courts should not be burdened with the unpleasant task of assessing a trial court's sincerity. Moreover, it seems fundamentally unfair to discourage appeals by dangling over the appellant the threat of a more thorough presentence investigation which may be used to justify a more severe penalty if he is again convicted. We agree that misconduct in prison should be punished by administrative and not by judicial measures. There may indeed be instances where a defendant has misled or deceived the court at the time of his initial sentencing. If this be a matter of judicial concern, then it should be corrected in all instances when it is discovered and not simply where its disclosure resulted from a second trial. Nor is it justification for additional punishment that an initial plea of guilty necessarily prevented a full recitation of the details of the offense which may have been exposed by a subsequent trial. We are of the opinion that these are all matters which can be fully developed in the trial court by a careful presentence investigation and report. As other courts have stated, it must be presumed that the original trial judge gave full consideration to all the surrounding circumstances and reached a considered judgment concerning the appropriate punishment. In the absence of formal procedures for reviewing sentences, trial judges regard as unseemly the process of second-guessing their colleagues on the bench.[8]

---

[8] We do not decide whether the rule we here adopt applies where a de-

While other devices for increasing punishment after an appeal and a second conviction are not here presented, we note by way of dictum that what we now hold with respect to an increased penalty for the same offense may well apply to situations where other charges, known to the prosecution at the time of the first trial, are belatedly added after an appeal and a reversal, or where, for the first time, prior convictions are used to bring defendant within the provisions of the Habitual Offender Act. There may, of course, be instances where offenses committed by the appellant were unknown to the authorities at the time of the original sentence and would have been prosecuted whether or not defendant had taken an appeal. These cases will be rare, and it is not our intention to foreclose such prosecutions if pursued in good faith. Nevertheless, the state will have the burden of showing that any additional charges, prosecuted after an appeal has been perfected, did not come to the attention of the authorities in time to be included in the initial prosecution but were subsequently discovered in the course of routine police investigation.

We therefore hold that to the extent the sentence imposed on defendant on April 22, 1966, exceeds in length the sentence imposed by the court on March 6, 1964, it is improper. Accordingly, the matter is remanded with directions that defendant be resentenced in a manner consistent with the decision we here reach.

Remanded.

---

fendant appeals and secures a trial de novo in the district court after a conviction in a justice court (Minn. St. 633.22), Village of Elbow Lake v. Holt, 69 Minn. 349, 350, 72 N. W. 564, 565; State v. Hedstrom, 233 Minn. 17, 25, 45 N. W. (2d) 715, 720; or a municipal court (Minn. St. 488.20); or a probate court (Minn. St. 525.014). State v. Borst, 278 Minn. 388, 389, note 1, 154 N. W. (2d) 888, 889, note 1.

In these situations the new trial does not necessarily result from errors occurring at the first trial. Under our statutes a defendant may appeal from a conviction based on a plea of guilty or a finding of guilty and secure a trial de novo notwithstanding the fact he has previously received a fair trial free from error.