**STATE of Minnesota, Respondent,**

v.

**John Peter NUNN, Appellant.**

**No. C6–86–873.**

Court of Appeals of Minnesota.

Jan. 13, 1987.

Review Denied March 13, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Michael F. Cromett, St. Paul, for appellant.

Considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant John Peter Nunn was convicted of and sentenced for attempted second degree murder, aggravated robbery and four counts of second degree assault, Minn. Stat. §§ 609.05, 609.11, 609.17, 609.19, subd. 1, 609.222, and 609.245 (1984). On appeal he contends: (1) show-up identification evidence was improperly admitted; (2) he was denied a fair trial when the prosecutor inquired into his prior felony convictions on cross-examination; (3) there was insufficient evidence to support the convictions; and (4) he was improperly sentenced. We affirm the convictions but vacate the sentence for aggravated robbery and remand for resentencing.

## FACTS

At about 11:30 a.m. on August 30, 1985, appellant and Daryl Harris robbed the Complete Home Furniture rental store on Lake Street in Minneapolis. They went into the store and began to fill out a rental application, then produced handguns and said: "This is a robbery, you all lay down or else we going to blow your head off." Six people were in the store that day: Joe Keenin, the owner of the store; four employees, Farley Fait, Ann Hill, Tim Kent, and Larry Bronson; and a customer, David Gray. Bronson ran out the front door and the robbers fired two or three shots at him. Harris then grabbed Kent and ordered him to open the safe and cash register, but Kent was new on the job and did not know how. Appellant and Harris ripped the cash register from the wall and ran out the back door of the store.

A witness saw two men run down the alley with a cash register and get into a brown car. The witness gave the license number to police, who soon spotted the car parked in front of a duplex on Portland Avenue, ten blocks from the rental store. Police watched as appellant left the duplex with a woman and got into the car; he was arrested a few blocks away. Harris was arrested when he fled from the duplex on

foot. A third man, Andrew Ford, was also taken into custody at the duplex.

Within an hour of the robbery, all three men were taken to the rental store for possible identification. Harris and appellant were taken into the store separately and shown to Keenin, Fait, Bronson and Kent. All four witnesses positively identified Harris as one of the robbers, and Keenin and Fait positively identified appellant as the other robber. Kent and an unknown employee looked at Ford as he sat in the back of a squad car, but did not identify him. Hill and Gray did not participate in the show-up.

Police searched the Portland Avenue duplex and found a dark blue .357 magnum Smith and Wesson short-barrelled revolver, a silver .38 caliber semi-automatic Colt Commander, money, rolled coins, and a gray jacket described by several witnesses. The prosecutor later discovered a piece of paper and a roll of tape in a pocket of the gray jacket. Lieutenant Drake Powers, an identification expert with the Minneapolis Police Department, matched a bullet core and jacket found in the rental store with the Smith and Wesson revolver. Appellant's fingerprint was on the paper found in the pocket of the gray jacket.

At trial Keenin, Fait, and Gray positively identified appellant and said he had carried the dark-colored revolver. Kent was "about 75 percent" sure appellant was one of the robbers. Bronson remembered showing a stereo to appellant on the morning of the robbery and was "80 percent certain" he was one of the robbers. Hill was upset by the robbery and could not positively identify appellant. Several witnesses said the weapons and the gray jacket seized by police at the duplex looked like those used by the robbers.

The State also produced evidence of another armed robbery committed by appellant and Harris. James Graham, the manager of Furniture Barn at 2019 East Lake Street, testified that he and an employee were robbed at gunpoint on August 16, 1985. Graham picked appellant's picture out of a photographic line-up and positively identified him at trial. Graham, who was a gun collector, said appellant was armed with a short-barrelled Smith and Wesson .357 revolver like the one seized at the duplex.

Appellant's version was that he borrowed his sister's car on August 30th and went to the rental store to look at speakers. He left the rental store at 11:25 a.m., stopped at the TV Center at 18th and Lake Street, and returned to the duplex at about 11:35 or 11:40 a.m. He then loaned the car to Andrew Ford, his brother. Ford returned 20 or 35 minutes later with Harris. Appellant denied robbing the rental store or the Furniture Barn with Harris but could not remember what he did on August 16th.

The jury found appellant guilty of attempted murder, aggravated robbery, and six counts of second degree assault. The trial court sentenced him to imprisonment for consecutive terms of eighty-one months for attempted murder, sixty months for aggravated robbery, and sixty months for the second degree assault against Keenin. The trial court also imposed three concurrent sixty month sentences for the assaults against Fait, Gray, and Hill. The assaults against Bronson and Kent merged into the convictions for attempted murder and aggravated robbery.

### ISSUES

1. Was identification evidence properly admitted?

2. Did appellant open the door to limited inquiry into his prior convictions?

3. Was the evidence sufficient?

4. Could appellant be sentenced for both aggravated robbery and four assaults against the victims of that robbery?

### ANALYSIS

#### I.

*Show-up Identification Evidence*

Appellant contends identification evidence was unreliable because the show-up

procedures were unduly suggestive. Appellant bases his claim on the fact that he and Harris were taken into the store while Ford was left outside in a squad car. Appellant also claims the witnesses were all together when they identified him. We agree with the trial court that the show-up was not impermissibly suggestive and the identification evidence was admissible.

■ The record does not support appellant's assertion that the witnesses were together when they identified him. One police officer did say the witnesses "gathered" in the store. However, Fait testified that he did not talk to others during the show-up and did not know until later whether they identified anyone. Keenin said no one was with him at the show-up and each witness was questioned separately. Finally, appellant was positively identified by a witness who did not participate in the show-up.

We have previously considered these show-up procedures. *See State v. Harris*, 396 N.W.2d 622 (Minn.Ct.App.1986).[1] We again conclude the circumstances did not create a "very substantial likelihood of irreparable misidentification." *Id.* at 623 (*quoting Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). *See also Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

## II.

*Cross-Examination on Prior Convictions*

The trial court admitted appellant's 1980 conviction for aggravated robbery and 1983 conviction for felony theft[2] to impeach his testimony. Appellant contends he was denied a fair trial when the prosecutor inquired into those convictions.[3]

■ A prosecutor cannot elicit testimony concerning the facts underlying a defendant's prior convictions unless such testimony would come within a recognized exception such as a defendant "opening the door" to such an inquiry. *See State v. Edwards*, 343 N.W.2d 269, 273 (Minn.1984). If the defendant puts his character in issue, the prosecutor may offer evidence in rebuttal. *See* Minn.R.Evid. 404(a)(1). Where the facts of a prior conviction are explained in direct examination, the prosecutor may conduct a limited inquiry on cross-examination. *State v. Wahl*, 394 N.W.2d 536, 538 (Minn.Ct.App.1986) *pet. for rev. denied*, (Minn. Nov. 19, 1986).

On direct examination, appellant agreed with his counsel's statement that he pleaded guilty to aggravated robbery in 1980 "because you told us you were guilty." Appellant said he pleaded not guilty in 1983 "because I was charged with robbery and I did not commit a robbery. It was a theft." When defense counsel asked appellant why he pleaded not guilty in this case, he replied: "Because I did not commit this case." On cross-examination, appellant admitted that several pending robbery charges were dropped in return for his 1980 guilty plea.

■ Appellant's direct testimony was designed to lead the jury to conclude he was the type of person who would admit his guilt if he were in fact guilty. Such testimony put one aspect of appellant's character into issue: his asserted attribute of taking responsibility for his criminal acts. Appellant thereby was legitimately exposed to limited inquiry into other possible motives for his guilty plea. *See Edwards* 343 N.W.2d at 273.

---

**1.** Harris was separately convicted of the same crimes. On appeal, we affirmed his convictions and sentences were affirmed.

**2.** Appellant was convicted of felony theft after we reversed his conviction for aggravated robbery and ordered a new trial. *See State v. Nunn*, 351 N.W.2d 16 (Minn.Ct.App.1984).

**3.** Appellant also alleges that the prosecutor made improper references to his convictions in his closing argument. Defense counsel chose to address the remarks in his own closing argument rather than object, and thus we do not find the level of prejudice needed to show reversible error. *See State v. Wick*, 331 N.W.2d 769, 771 (Minn.1983).

## III.

### Sufficiency of Evidence

■ Appellant next contends there was insufficient evidence that he was one of the robbers. Uncorroborated identification testimony from a single eyewitness, depending on all the facts, may be sufficient to support a verdict. *See State v. Walker,* 310 N.W.2d 89, 90 (Minn.1981). Here three eyewitnesses positively identified appellant. Substantial physical evidence linked him to the crime, as did evidence of another similar robbery. Appellant's testimony amounted to an admission that he was at the rental store close to the time of the robbery. The jury could have reasonably concluded from the evidence that appellant was guilty of the charged offenses. *See State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978).

## IV.

### Sentencing

■ Appellant contends his sentence unfairly exaggerates the criminality of his conduct. We rejected a similar claim brought by appellant's accomplice.[4] *See Harris* at 623 (*citing Massey v. State,* 352 N.W.2d 487 (Minn.Ct.App.1984) *pet. for rev. denied,* (Minn. Oct. 16, 1984)). The trial court did not abuse its discretion when it sentenced appellant consecutively. However, from examining the record we conclude that appellant could not be sentenced for both aggravated robbery and then separately for four second degree assaults when the victims of the assaults were all victims of the one aggravated robbery.

Minn.Stat. § 609.035 (1984) provides that:
[I]f a person's conduct constitutes more than one offense under the laws of this state, he may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution of any other of them.

*Id.* In multiple victim cases, the trial court may impose one sentence per victim if the sentences do not unfairly exaggerate the criminality of the defendant's conduct. *State v. Montalvo,* 324 N.W.2d 650, 652 (Minn.1982); *State v. Rieck,* 286 N.W.2d 724, 727 (Minn.1979). There were multiple victims of the assaults. The issue is whether there were actually "multiple victims" of the aggravated robbery.

Appellant was charged with aggravated robbery: a robbery committed with a dangerous weapon or with the infliction of bodily harm. *See* Minn.Stat. § 609.245 (1984). Robbery is defined by Minn.Stat. § 609.24 (1984), which provides:

Whoever, knowing he is not entitled thereto, takes personal property *from the person or in the presence of another and uses or threatens the imminent use of force against any person* to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery * * *.

*Id.* (emphasis added). The State's theory of the case was that Kent alone was the victim of the aggravated robbery. The complaint alleged that appellant committed aggravated robbery against Kent and second degree assault against everyone present in the store at the time of the robbery, including Kent. At sentencing, the trial court merged count seven, second degree assault against Kent, with count two, the aggravated robbery charge, which is consistent with the State's position.

We do not accept the State's theory. First, every person in the rental store was a victim of the aggravated robbery, as that crime is statutorily defined. *See* Minn. Stat. §§ 609.24 and 609.245 (1984). Second, the trial court's instructions to the jury on the elements of aggravated robbery failed to name a specific victim and instead used the language "employees." Finally, while the verdict forms for the six assault counts

---

4. Harris was sentenced to consecutive terms of sixty months for attempted murder and thirty-six months for aggravated robbery with four concurrent thirty-six month sentences for as-

sault. *See Harris* at 623. We upheld his sentence because it did not "appear too harsh considering the circumstances of this crime." *Id.* at 623.

listed the name of each victim, the aggravated robbery form only stated:

> WE THE JURY IN THE ABOVE–ENTITLED MATTER, FIND THE DEFENDANT, JOHN PETER NUNN, GUILTY OF COUNT TWO, AGGRAVATED ROBBERY.

The jury never determined that Kent was the only victim of the aggravated robbery; nor would the facts of this case permit such a determination. We conclude that every person assaulted by appellant was also a victim of appellant's aggravated robbery.

We therefore hold that the trial court erred by sentencing appellant for both aggravated robbery and second degree assaults against four robbery victims. *See e.g. State v. Norregaard,* 384 N.W.2d 449 (Minn.1986) (defendant could not be sentenced for aggravated robbery and third degree assault where robbery and assault occurred at the same time and place). However, under the multiple-victim exception, the trial court could have imposed sentences for attempted murder against Bronson and second degree assault against each of five other victims. *Compare Rieck,* 286 N.W.2d at 725 (five concurrent sentences for aggravated assault proper where defendant firebombed a home occupied by five people). We therefore vacate appellant's sentence for aggravated robbery and remand for resentencing. Upon remand, the trial court may not impose a total sentence in excess of appellant's original sentence of 201 months. *See State v. Carver,* 390 N.W.2d 431, 434 (Minn.Ct.App. 1986) (*citing State v. Holmes,* 281 Minn. 294, 161 N.W.2d 650 (1968)).

## DECISION

Identification testimony was properly admitted. Appellant was properly subjected to limited cross-examination concerning his prior convictions. There was sufficient evidence to support the jury's verdicts. Appellant's sentence for aggravated robbery is vacated and the case remanded for resentencing consistent with this opinion.

Affirmed in part, reversed in part, and remanded for resentencing.