STATE OF MINNESOTA

IN SUPREME COURT

A13-1071

Court of Appeals                                             Anderson, J.
                                        Dissenting, Page, J., and Gildea, C.J.

State of Minnesota,

                 Respondent,

vs.                                                      Filed:  August 5, 2015
                                                   Office of Appellate Courts
Kabba Kangbateh,

                 Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, Saint Paul, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

The district court did not err in sentencing because the record does not support appellant's assertion that the court imposed a greater sentence on remand following appellant's successful appeal of his conviction of attempted second-degree murder for the benefit of a gang.

Affirmed.

1

O P I N I O N

ANDERSON, Justice

Appellant Kabba Kangbateh asserts that on remand following a successful appeal of his conviction for attempted second-degree murder for the benefit of a gang, the district court imposed a greater sentence for a lesser included offense. Based on that assertion, he claims his sentence violates the public policy and fairness concerns articulated in *State v. Prudhomme*, 303 Minn. 376, 380, 228 N.W.2d 243, 246 (1975). Because the record does not support Kangbateh's assertion, we affirm.

I.

Late in the evening of March 5, 2010, Kangbateh took a cab to a house party in St. Paul. Many of the party's attendees were affiliated with various street gangs. Kangbateh testified that he was an associate, but not a member, of the "Selby Siders." K.W., 16, also at the party, was with friends who were members of the "Eastside Boys." After Kangbateh went inside the house without paying his cab fare, the driver called the St. Paul Police Department. Police arrived at the house party shortly after midnight and most guests, including K.W., left immediately. Minutes later, K.W. was shot through his chest and back as he walked down the street. After hearing a loud gun shot, police observed a male, later identified as Kangbateh, walking in an alley near a garage, and after a foot chase, arrested him. They recovered a .303-caliber, MK-I, bolt-action carbine rifle in the garage near where they first saw Kangbateh. K.W. later recovered from the shooting.

Kangbateh was charged with attempted second-degree murder for the benefit of a gang, attempted second-degree murder, second-degree assault for the benefit of a gang, and second-degree assault. After a jury trial, Kangbateh was found guilty and convicted of all four offenses.[1] At the initial sentencing hearing, the parties did not agree on the appropriate sentence for Kangbateh's conviction of attempted second-degree murder for the benefit of a gang. The State asked the district court to impose a 165-month sentence; Kangbateh requested either a dispositional departure or a sentence of 142 months, which was at the low end of the presumptive sentencing range under the Minnesota Sentencing Guidelines. The arguments of the parties focused on the seriousness of Kangbateh's conduct and his criminal record. Describing Kangbateh's conduct as a "totally senseless" and "unprovoked act," the district court sentenced Kangbateh to 165 months in prison for the conviction of attempted second-degree murder for the benefit of a gang. In accordance with Minn. Stat. § 609.035 (2014), the court did not impose a sentence for Kangbateh's conviction of the lesser-included offense of attempted second-degree murder.

---

[1] Because it convicted Kangbateh on the greater "benefit-of-a-gang" offenses, the district court erred in also convicting Kangbateh on the lesser-included offenses of second-degree assault and attempted second-degree murder. *See* Minn. Stat. § 609.04 (2014); *State v. Lopez-Rios*, 669 N.W.2d 603, 615 (Minn. 2003) (observing that section 609.04 "forbids two convictions of the same offense or one offense and a lesser-included offense on the basis of the same criminal act," and that "[i]n a crime committed for the benefit of a gang, the underlying crime is an included crime"). However, this error was remedied when the court of appeals reversed Kangbateh's two convictions on the greater offenses. *State v. Kangbateh* (*Kangbateh I*), No. A11–2147, 2012 WL 5990229, at *6 (Minn. App. Dec. 3, 2012).

At no point during the original sentencing hearing did the attorneys, or the district court, mention Minn. Sent. Guidelines 2.G, the age of the victim, the benefit-of-a-gang element of the sentenced offense, or the presumptive sentence for the lesser-included offense of attempted second-degree murder. Section 2.G of the Minnesota Sentencing Guidelines outlines the procedures for calculating the presumptive sentencing ranges for a number of offenses that do not appear on the standard Sentencing Guidelines Grid, Minn. Sent. Guidelines 4.A. The modifiers listed in Minn. Sent. Guidelines 2.G apply to both the "presumptive duration" (commonly referred to as the middle of the box), *see* Minn. Sent. Guidelines 2.G.1, and the upper and lower ends of the range found in the grid cell for the relevant offense. *See* Minn. Sent. Guidelines 1.B.5(b). For example, Minn. Sent. Guidelines 2.G.10.b(2)(ii), provides that when an offender is sentenced for an offense committed for the benefit of a gang, the "presumptive duration is determined by locating the duration in the appropriate cell on the applicable Grid" and adding 12 months to the sentencing range if the underlying crime is an attempt and the victim was younger than 18. The presumptive sentencing range for attempted second-degree murder is 130 to 183 months, with a presumptive duration of 153 months. *See* Minn. Sent. Guidelines 2.G.2, 4.A. Accordingly, the presumptive sentencing range for attempted second-degree murder for the benefit of a gang when the victim was younger than 18 is 142 to 195 months, with a presumptive duration of 165 months.

Kangbateh filed a direct appeal, arguing, among other things, that the State failed to present sufficient evidence on the benefit-of-a-gang element. Persuaded by Kangbateh's argument, the court of appeals reversed his convictions of attempted second-

4

degree murder for the benefit of a gang and second-degree assault for the benefit of a gang, and remanded with instructions to sentence Kangbateh on the conviction of the lesser-included offense of attempted second-degree murder. *State v. Kangbateh* (*Kangbateh I*), No. A11–2147, 2012 WL 5990229, at *6 (Minn. App. Dec. 3, 2012); *see also State v. Lopez-Rios*, 669 N.W.2d 603, 615 (Minn. 2003) (noting that the crime underlying an offense of a crime committed for the benefit of a gang is a lesser-included offense).

On remand for sentencing on Kangbateh's conviction of the lesser-included offense of attempted second-degree murder, the attorneys' arguments reflected an erroneous assumption that the court of appeals' decision had no impact on the presumptive sentencing range. The State sought a 195-month sentence, while Kangbateh asked for a 142-month sentence, the high and low ends of the box respectively, for attempted second-degree murder for the benefit of the gang.[2] The parties' arguments again focused on the seriousness of Kangbateh's conduct and his criminal record. Kangbateh became extremely agitated at the remand sentencing hearing, because he mistakenly believed the court of appeals had reversed *both* of his attempted second-degree murder convictions. Because of his disruptive conduct, the district court ordered Kangbateh removed from the courtroom. In response, he yelled, "F* * * you all. I'll kill

---

[2] The presumptive sentencing range for attempted second-degree murder was 130 months to 183 months. Minn. Sent. Guidelines 2.G.2; *id.*, 4.A. The prosecutor at one point referred to 153 months as the "middle of the box."

all of you. This is my life." The court then postponed the sentencing hearing for one week.

At the subsequent hearing, Kangbateh again appeared before the district court. The State and Kangbateh made the same sentencing requests, 195 months and 142 months, respectively. The court declined the State's request to impose a higher sentence than originally imposed, noting that such a sentence would not be proper, "as [it] did not wish to appear to be in some way vindictive as the result of the defendant exercising his rights to an appeal." Kangbateh again became extremely disruptive and again was removed from the courtroom.[3] The court imposed a 165-month prison sentence for Kangbateh's conviction of the lesser-included offense of attempted second-degree murder, emphasizing the "sheer, wanton brazenness" of Kangbateh's act. The court noted that Kangbateh had fired a weapon into a crowd of people he did not know.

On appeal to the court of appeals, Kangbateh asserted that at the original sentencing hearing the district court had imposed a 153-month sentence for his conviction of the lesser-included offense of attempted second-degree murder, which was automatically increased to 165 months under Minn. Sent. Guidelines 2.G.10.b(2)(ii), because the commission of the lesser-included offense benefited a gang and the victim was younger than 18. Accordingly, Kangbateh argued that on remand, because the district court originally imposed a 165–month sentence for his conviction of attempted

---

[3] Kangbateh claims the court improperly considered his violent courtroom outbursts as a sentencing factor when it chose not to subtract the 12 months from his original 165-month sentence. Based on our careful review of the record, we conclude that the outburst did not influence the district court's sentencing decision.

6

second-degree murder for the benefit of a gang, the district court abused its discretion by imposing the same sentence for his conviction of attempted second-degree murder.

The court of appeals affirmed the district court, observing that because the sentence imposed on remand was neither longer than the original sentence nor a departure from the presumptive sentencing guidelines, it did not violate the public policy and fairness concerns underlying *Prudhomme*, 303 Minn. at 380, 228 N.W.2d at 246 (holding that a district court may not impose a longer sentence than the sentence originally imposed when a defendant is granted a new trial or when an appellate court sets aside a sentence and remands for resentencing). *State v. Kangbateh* (*Kangbateh II*), No. A13-1071, 2013 WL 6050479, at *2 (Minn. App. Nov. 18, 2013).

## II.

Before our court, Kangbateh renews his assertion that the "sentencing court originally imposed a 153-month sentence for [his] underlying attempted-murder conviction." Based on that assertion, he argues "[u]nder *Prudhomme*, [the sentencing court] had no authority to increase that sentence on the same offense to 165 months after [he] prevailed on appeal." He contends that the district court could impose no more than 153 months in prison because the court was imposing a sentence on "the same" offense that was sentenced at the original sentencing hearing.

We review sentencing decisions for an abuse of discretion. *State v. Ford*, 539 N.W.2d 214, 229 (Minn. 1995). This court generally will not interfere with a sentencing court's decision to impose a term within the presumptive sentence range. *State v. Freyer,* 328 N.W.2d 140, 142 (Minn. 1982); *see also State v. Kindem*, 313 N.W.2d 6, 7 (Minn.

7

1981). Nevertheless, the trial court's sentencing power is not absolute. *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999).

We begin by considering whether the record supports Kangbateh's assertion that the "sentencing court originally imposed a 153-month sentence for [his] underlying attempted-murder conviction." Based on our careful review of the record, we conclude that at the original sentencing hearing, the district court did not impose any sentence, much less a 153-month sentence, for Kangbateh's conviction of the lesser-included offense of attempted second-degree murder. Instead, the court sentenced Kangbateh for his conviction of the greater offense of attempted second-degree murder for the benefit of a gang. Because the record does not support Kangbateh's threshold assertion that he was sentenced for "the same" conviction at the original and remand sentencing hearings, his *Prudhomme* argument fails.[4]

The dissent is correct that it is "self-evident" that in determining the *presumptive sentencing range* for attempted second-degree murder committed for the benefit a gang, Minn. Sent. Guidelines 2.G.10.b(2)(ii) directs the court to add 12 months to each end of the sentencing range for the underlying lesser-included offense. But it does not follow

---

[4] The dissent contends that it is "axiomatic that a defendant may not be punished for an offense for which there is no conviction." We agree. But, contrary to the dissent's implication, Kangbateh has not been punished for such an offense. At the sentencing hearing after remand, the district court sentenced Kangbateh for a *separate* conviction—albeit a less serious offense—and imposed the same, but not a greater, sentence. It is neither unfair nor unjust, as the dissent claims, for a defendant to receive a guidelines sentence for a conviction on which he had never been sentenced, even if the latter sentence is identical to that imposed for a reversed conviction. Whether the imposition of the same sentence on remand can ever implicate the principle articulated in *Prudhomme*, 303 Minn. at 380, 228 N.W.2d at 246, is not a question we need to answer here.

that in determining the *appropriate sentence* for any particular defendant, the district court must start by determining what the appropriate sentence would have been had the lesser-included offense *not* been committed for the benefit of a gang and then add 12 additional months to that sentence.

The dissent's argument presumes that the district court calculated this particular sentence by first determining that the appropriate sentence for the lesser-included offense of attempted second-degree murder was a middle-of-the-box sentence of 153 months and then adding 12 months to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18. Such a presumption is not supported by the record. At the original sentencing hearing, neither the State nor Kangbateh discussed the 153-plus-12-months analysis upon which Kangbateh now relies.[5] Moreover, the district court never referenced *either* 153 months

---

[5]     The 153-plus-12-months analysis is also inconsistent with the presentence investigation report (PSI). The recommendation in the PSI states:

> Based on the available information, this investigating officer respectfully recommends that the Court sentence the defendant on Count 1 Attempted Intentional Second Degree Murder for the Benefit of a gang *in accordance with the Minnesota Sentencing Guidelines* and commit him to the Commissioner of Corrections for *a term of 165 months* (minimum incarceration equals 110 months/maximum supervised release equals 55 months), executed.

(Emphasis added.) Nowhere in the PSI did the probation officer suggest that the district court impose a 153-month sentence for the lesser-included offense of attempted second-degree murder and then add 12 months because the lesser-included offense had been committed for the benefit of the gang. Instead, the PSI recommended that the court impose a 165-month sentence, which was the presumptive duration for the offense that was actually before the court for sentencing—attempted intentional second-degree

(Footnote continued on next page.)

or 12 months at the original sentencing hearing. Similarly, at the remand sentencing hearing, the district court did not reference 153 or 12 months. Based on the record, it is clear that at the original sentencing hearing, the district court did not impose any sentence, much less a 153-month sentence, for Kangbateh's conviction of the lesser-included offense of attempted second-degree murder.

Moreover, the dissent's interpretation of the record presumes the following facts. First, the district court calculated Kangbateh's initial sentence by determining that the appropriate sentence for the lesser-included offense was 153 months and then adding 12 months solely to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18. Second, the court of appeals ruled that the State failed to prove that Kangbateh committed the benefit-of-a-gang element. Third, on remand the original justification for the 12-month addition to Kangbateh's sentence was no longer valid. Fourth, knowing that the original justification was no longer valid, the district court added 12 months to Kangbateh's sentence without any legal justification. Such conjecture necessarily presumes that the district court was intentionally vindictive on remand.

---

(Footnote continued from previous page.)
murder for the benefit of a gang. Put differently, the language of the PSI supports our conclusion that at the original sentencing hearing, the district court did not expressly impose any sentence, much less a 153-month sentence, for Kangbateh's conviction of the lesser-included offense of attempted second-degree murder. After all, the district court was *prohibited* from sentencing him on the lesser-included offense. *See* Minn. Stat. § 609.035.

On the record before us, we are unwilling to presume such an intentional vindictiveness. *See State v. Munt*, 831 N.W.2d 569, 580 (Minn. 2013) ("When reviewing a claim that a judge was partial against the defendant, we presume the judge 'discharged his or her judicial duties properly.' ") (quoting *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998)). Instead, we presume the district court, as it said, concluded that a 165-month sentence was appropriate based on the "sheer, wanton brazenness" of Kangbateh's act of firing a weapon into a crowd of people whom he did not know, regardless of whether it was committed for the benefit of a gang. The complete absence of any discussion of the benefit-of-a-gang element at the original and remand sentencing hearings demonstrates that it was of little import in determining Kangbateh's sentences, especially when the 165-month sentence fell well within the presumptive sentencing range for attempted second-degree murder for the benefit of a gang (142 to 195 months) and the lesser-included offense of attempted second-degree murder (130 to 183 months).

In sum, the position that Kangbateh takes is essentially an arithmetic proposition without record support. Because he cannot point to any direct evidence supporting his claim (e.g., any statement by a lawyer, let alone the district court, that the 165-month sentence was, in fact, arrived at by adding 12 to 153), he asks us to invoke the prophylactic and prudential rule from *Prudhomme*, 303 Minn. at 380, 228 N.W.2d at 246, based merely on assumptions about what the parties argued and what the district court ordered. This we are not willing to do, at least on this record. Because there is insufficient support in the record for Kangbateh's assertion that "the sentencing court

11

originally imposed a 153-month sentence for [his] underlying attempted-murder conviction," we affirm.

Affirmed.

D I S S E N T

PAGE, Justice (dissenting).

I respectfully dissent. In my view, the sentencing court calculated Kangbateh's initial sentence of 165 months by adhering to the Minnesota Sentencing Guidelines, which required the sentencing court to add 12 months for the offense committed for the benefit of a gang to the presumptive duration for the predicate offense of attempted second-degree murder.[1] Because it is axiomatic that a defendant may not be punished for an offense for which there is no conviction and because in this case we know that Kangbateh's original sentence specifically included 12 months for an offense that was reversed on appeal, on remand the sentencing court was required, at a minimum, to subtract 12 months from Kangbateh's sentence.

Kangbateh was initially found guilty of attempted second-degree murder for the benefit of a gang, attempted second-degree murder, second-degree assault for the benefit of a gang, and second-degree assault. In sentencing Kangbateh on the attempted second-degree murder for the benefit-of-a-gang offense, the sentencing court explained, "the normal sentence in this matter would be to sentence at the middle of the box and I don't see that there's any reason to do otherwise." The court then sentenced Kangbateh to an

---

[1] As of 1990, a "crime . . . in furtherance of criminal activity by an organized gang" was an aggravating factor that could support a departure. *See* Minn. Sent. Guidelines II.D.2.b.(7) (1990). This provision was deleted in 1991. *See* Minn. Sent. Guidelines II.D.2.b (1992). The Sentencing Commission clarified this change in the Guidelines by stating: "Gang related criminal activity is now a separate crime under Minn. Stat. § 609.229 and can no longer be used as a reason for departure from the presumptive sentence." Minn. Sent. Guidelines II.D.205 (1992).

executed term of 165 months in prison, which is consistent with a middle-of-the-box sentence under the Guidelines for the offense of attempted second-degree murder for the benefit of a gang committed by a defendant like Kangbateh with a criminal history score of zero.[2]

Kangbateh appealed all four convictions. The court of appeals reversed both of the convictions for the crimes that included the "for the benefit of a gang" offense and remanded for resentencing. *State v. Kangbateh* (*Kangbateh I*), No. A11-2147, 2012 WL 5990229, at *6 (Minn. App. Dec. 3, 2012).

On remand, the sentencing court sentenced Kangbateh to 165 months for the offense of attempted second-degree murder. In doing so, the court explained:

> I would state for the record that the Court is aware that this is the same sentence that was originally imposed. However, it is well within the guidelines, and *the Court believes that the sentence is appropriate given the sheer wanton, brazenness of the act.* The defendant fired a weapon into a crowd of people whom he did not know, obviously intending to harm or to kill someone, in addition to which his behavior in court has been of an extremely threatening measure—extremely—has been extremely threatening, and the Court believes that he is, indeed, a dangerous person

---

[2] The 165-month sentence imposed was also consistent with the pre-sentence investigation report, which was based on the Guidelines. The recommendation in the report reads as follows:

> Based on the available information, this investigating officer respectfully recommends that the Court sentence the defendant on Count 1 Attempted Intentional Second Degree Murder for the Benefit of a gang *in accordance with the Minnesota Sentencing Guidelines* and commit him to the Commissioner of Corrections for *a term of 165 months* (minimum incarceration equals 110 months/maximum supervised release equals 55 months), executed.

(Emphasis added.)

D-2

and should be given—and should be sentenced accordingly. I do not believe it'd be proper to sentence above this sentence, as the Court did not wish to appear to be in some way vindictive as the result of the defendant exercising his rights to an appeal.

That's all.

(Emphasis added.) The court of appeals affirmed. *State v. Kangbateh* (*Kangbateh II*), No. A13-1071, 2013 WL 6050479, at *2 (Minn. App. Nov. 18, 2013). On appeal to us, Kangbateh argues that, because he was originally sentenced to 153 months for the offense of attempted second-degree murder and 12 months for committing the attempted second-degree murder offense for the benefit of a gang, his sentence on remand should have been no longer than 153 months.

At the time of Kangbateh's offense, Section II.G of the Minnesota Sentencing Guidelines (2009) provided:

> For persons sentenced under Minn. Stat. § 609.229, subd. 3(a) where there is a sentence for an offense committed for the benefit of a gang, . . . [t]he presumptive duration is determined by the duration contained in the Sentencing Guidelines Grid cell defined by the offender's criminal history score and the severity level of the underlying crime with the highest severity level, or the mandatory minimum, whichever is greater, plus an additional 12 months or an additional 24 months if the victim of the crime was under the age of eighteen years. If the underlying crime is an attempt, the presumptive duration includes an additional 6 months or an additional 12 months if the victim of the crime was under the age of eighteen years.

> Any changes to presumptive sentences under this section are also applied to the upper and lower numbers of the sentencing range provided on the Sentencing Guidelines Grids.

In order to determine a defendant's sentence, the Guidelines first require a sentencing court to calculate the defendant's presumptive sentencing range for the underlying offense, here, attempted second-degree murder:

D-3

For persons convicted of attempted offenses . . . , the presumptive sentence is determined by locating the Sentencing Guidelines Grids cell defined by the offender's criminal history score and the severity level of the completed . . . offense . . . and dividing the duration contained therein by two. . . .

Minn. Sent. Guidelines II.G. (2009). In this case, the presumptive range for second-degree murder, a severity level 11 offense, for a defendant like Kangbateh with a criminal history score of zero is 261 months to 367 months, and the presumptive duration[3] is 306 months. *See* Minn. Sent. Guidelines IV (2009). Because the Guidelines provide that the presumptive sentencing range and presumptive duration for attempted offenses is half of that required for completed offenses, *see* Minn. Sent. Guidelines II.G (2009), Kangbateh's presumptive sentencing range for attempted second-degree murder was 130.5 to 183.5 months, and the presumptive duration was 153 months.

Next, because Kangbateh was sentenced for attempted second-degree murder for the benefit of a gang, the Guidelines required that an additional 12 months be added to the lower and upper ends of the sentencing range, Minn. Sent. Guidelines II.G. (2009), making the bottom of the presumptive range 130.5 months plus 12 months for a total of 142.5 months, and the top of the presumptive range 183.5 months plus 12 months for a total of 195.5 months, with the presumptive duration being a total of 165 months. *Id.* As previously noted, the sentencing court explained that "the normal sentence in this matter would be to sentence at the middle of the box and I don't see that there's any reason to do

---

[3]     The current Guidelines define "presumptive duration" as the "recommended fixed sentence length in months found in the appropriate cell on the applicable Grid." Minn. Sent. Guidelines 1.B.13.b.

otherwise."[4]  Thus, consistent with the Guidelines' presumptive duration, the court

sentenced Kangbateh to an executed term of 165 months in prison.

Here, in affirming Kangbateh's sentence on remand, the court begins by refuting

Kangbateh's argument that the "sentencing court originally imposed a 153-month

sentence for [his] underlying attempted-murder conviction."  While the court is correct

that Kangbateh's argument is inconsistent with a proper reading of the Guidelines, the

court's discussion does not end the analysis.  In fact, by shortcutting the analysis, the

court does a disservice to our obligation of ensuring that, on remand from a sentence

reversal, a defendant does not receive an improper sentence.  After dismissing

Kangbateh's argument, the court ultimately concludes that the record does not support

the conclusion that Kangbateh's initial sentence included an additional 12 months.  The

court goes as far as to say, "the district court never referenced *either* 153 months or 12

months at the original sentencing hearing."  Moreover, the court adds, "the complete

absence of any discussion of the benefit-of-a-gang element at the original and remand

sentencing hearings demonstrates that it was of little import in determining Kangbateh's

sentences . . . ."

Based on these statements, the court ignores the words used by the sentencing

court at Kangbateh's first sentencing, and ignores the requirements in the Guidelines.  It

is self-evident that the Guidelines mandated that Kangbateh's sentence for attempted

second-degree murder committed for the benefit of a gang be calculated, as discussed

---

[4]  Courts have used the phrase "middle of the box" synonymously with the phrase "presumptive duration."

above, by determining the appropriate sentencing range for the predicate offense and then adding a mandatory 12 months to each end of the range for committing the predicate offense for the benefit of a gang. Further, it is self-evident that the presumptive duration for Kangbateh's original sentence under the Guidelines was 165 months, that the sentencing court intended to sentence Kangbateh to the presumptive duration[5] under the Guidelines, and that the sentence imposed by the sentencing court was 165 months. Given these facts and the presumption that the court complied with the Guidelines when it sentenced Kangbateh, it is also self-evident that the original sentence imposed included the additional time mandated by the Guidelines when the offense being sentenced was committed "for the benefit of a gang." Because Kangbateh's original sentence included the additional time required for an offense committed "for the benefit of a gang," which was reversed on appeal, fairness and justice require that the added time be subtracted on remand.[6]

---

[5] I presume that the sentencing court sentenced Kangbateh in accordance with the Guidelines. *See State v. Shattuck*, 704 N.W.2d 131, 139 (Minn. 2005) (explaining that in 1997 the legislature amended the statute regarding the Minnesota Sentencing Guidelines by adding the language, "[a]lthough the sentencing guidelines are advisory to the district court, the court *shall* follow the procedures of the guidelines when it pronounces sentence" (citation omitted) (quotation marks omitted)); *see also Hannon v. State*, 752 N.W.2d 518, 522 (Minn. 2008) ("[W]e presume that a judge has discharged her duties properly.").

[6] We have held that a court may not impose a more severe sentence upon a defendant after the defendant's successful appeal results in a remand for a new trial. *State v. Holmes*, 281 Minn. 294, 304, 161 N.W.2d 650, 656-57 (1968). In *State v. Prudhomme*, we expanded on *Holmes* and held that "procedural fairness and principles of public policy" prohibit a trial court from imposing a more severe sentence for the same

(Footnote continued on next page.)

In addition to principles of fairness and justice, the principle articulated in *Burks v. United States*, 437 U.S. 1 (1978), prohibits the consideration of the offense "for the benefit of a gang" on remand. In *Burks*, the United States Supreme Court concluded that when a conviction is reversed, as here, for insufficient evidence, double jeopardy prohibits retrial. *Id.* at 18. Further, as we noted in *Hankerson v. State*, "[I]f the state [ ] presented insufficient evidence to support the district court's adoption of the aggravating factors in the first trial, the *Burks* exception might . . . preclude any consideration of these aggravating factors on resentencing." 723 N.W.2d 232, 238-39 (Minn. 2006). The principle underlying the rule articulated in *Burks* and *Hankerson* applies with equal, if not greater, force in this case.

Finally, the court notes:

> [T]he dissent's interpretation of the record presumes the following facts. First, the district court calculated Kangbateh's initial sentence by determining that the appropriate sentence for the lesser-included offense was 153 months and then adding 12 months solely to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18. Second, the court of appeals ruled that the State failed to prove that Kangbateh committed the lesser-included offense for the benefit of a gang. Third, on remand the original justification for the 12-month addition to Kangbateh's sentence was no longer valid. Fourth, knowing that the original justification was no longer valid, the district court added 12 months to Kangbateh's sentence without any legal justification.

The court is simply wrong when it asserts that, under my interpretation of the record, the facts it lays out must be true. In making that assertion, the court misreads the

---

(Footnote continued from previous page.)
crime after a case has been remanded for resentencing. 303 Minn. 376, 380, 228 N.W.2d 243, 246 (1975).

record and misconstrues my dissent. Moreover, the court's assertion does not have to be true to conclude that Kangbateh's original sentence included additional time for an offense that was reversed on appeal, and that on remand the sentencing court was required to subtract that additional time from Kangbateh's sentence. First, as explained in some detail above, if the sentencing court properly followed the Guidelines, which our standard of review requires us to presume that it did, and intended to originally sentence Kangbateh to the middle of the box for attempted second-degree murder for the benefit of a gang, which is what the court said it was doing at the time of sentencing, then 165 months was the presumptive Guidelines sentence and the sentence the court imposed.[7] Second, whether the court of appeals ruled that "the State failed to prove that Kangbateh committed the lesser-included offense for the benefit of a gang" has no bearing on the

_____

[7]     The court contends that:

> The dissent's argument presumes that the district court calculated this particular sentence by first determining that the appropriate sentence for the lesser-included offense of attempted second-degree murder was a middle-of-the-box sentence of 153 months and then adding 12 months to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18.

The court's characterization of my dissent is simply wrong. The court's myopic focus on Kangbateh's argument that he was sentenced to 153 months for the offense of attempted second-degree murder and 12 months for committing the attempted second-degree murder offense for the benefit of a gang has caused it to misread my dissent. I do not presume, as the court suggests, that the sentencing court simply sentenced Kangbateh to 153 months for attempted second-degree murder and then added 12 months for the "benefit of the gang" offense. I only presume that the sentencing court did what it said it was doing—sentencing Kangbateh to a middle-of-the-box sentence, and that in doing so the court executed its duties in accordance with the requirements of the sentencing Guidelines, as discussed above, and the recommendation from the presentence investigation report.

outcome of this case. There is no question that the court of appeals reversed both of Kangbateh's convictions for the offenses that included the separate offense "for the benefit of a gang" and remanded for resentencing. No appeal was taken from that decision. Thus, the reason for the court of appeals' reversal is not relevant to our decision here nor properly before us. Therefore, the court of appeals' reasoning does not matter.

What does matter is that after the reversals Kangbateh may not be punished for having committed attempted second-degree murder for the benefit of a gang, which is what the court does with its holding today. Because Kangbateh may not be punished for offenses that were reversed on appeal, the court's third point is baffling. There is no question that the sentencing court had no justification for punishing Kangbateh for a conviction that had been reversed and for which therefore there was no longer a conviction. Finally, with respect to the court's fourth point, it is difficult to tell what rationale the sentencing court used as the basis for Kangbateh's sentence on remand. What we do know is that, at Kangbateh's initial sentencing, the sentencing court explained that Kangbateh deserved "normal" treatment, which was a middle-of-the-box sentence of 165 months. At Kangbateh's remand sentencing for attempted second-degree murder, in which the presumptive range was 130.5 to 183.5 months, and the presumptive duration was 153 months, the sentencing court was inconsistent with its earlier statements and did not sentence Kangbateh to the middle of the box. Instead, the court sentenced Kangbateh to an executed sentence that was *greater* than the middle of the box. Here, the

court pretends that the sentencing court did not say what it said or do what it did. This pretext is in direct contradiction to the record in this case.

Thus, I would reverse the court of appeals and remand to the district court for the imposition of a sentence no greater than the presumptive duration for attempted second-degree murder.[8]

For these reasons, I respectfully dissent.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Page.

---

[8] To the extent that there is any question as to whether Kangbateh's original sentence of 165 months included the mandated additional time for "the benefit of a gang" offense, the court's resolution of this case is still improper. The proper resolution would be to remand to the sentencing court for clarification as to whether the original sentence included the mandated additional time.