**STATE of Minnesota, Respondent,**

v.

**Kelvin JACKSON, Appellant.**

No. A06–1001.

Supreme Court of Minnesota.

May 30, 2008.

## OPINION

PAGE, Justice.

Appellant Kelvin Jackson was convicted of first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2006), following a jury trial in Ramsey County. The district court sentenced Jackson to an executed term of 210 months, a double durational upward departure from the high end of the range for the presumptive sentence under Minnesota's Sentencing Guidelines. The court of appeals affirmed. Concluding the departure was impermissibly based on uncharged criminal conduct, we reverse and remand for resentencing.

On Sunday, November 6, 2005, at 8:45 p.m., Maplewood police were dispatched to a residence on a home invasion robbery and assault. Upon arrival, they found the homeowner, 67–year–old G.W., bleeding profusely from head wounds. G.W. told them that a man and a woman had forced their way into his home, assaulted him, and stolen his property. Earlier that day, around 9:30 a.m., a woman had come to G.W.'s residence, asking to use his phone because she had car trouble. G.W. allowed her to use the cordless phone in the kitchen, but when she walked into the living room, G.W. told her to return to the kitchen because his wife was sleeping. G.W. believed the woman involved in the nighttime robbery was the same woman who had used his phone in the morning.

The police investigation led to Jackson, who resided in an apartment building a short distance from G.W.'s residence. Two officers went to Jackson's residence, arriving approximately three hours after the robbery, and made contact with Jackson and his girlfriend Rachel West. After a

Lori Swanson, Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for Respondent.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant State Public Defender, Office of the State Public Defender, St. Paul, MN, for Appellant.

short conversation, the officers left. Because Jackson and West resembled the description of the robbery suspects, the officers searched the area between the apartment building and G.W.'s residence. During the search, the officers found G.W.'s wallet and identification papers in the apartment building dumpster. After calling for additional officers, the decision was made to arrest Jackson and West. When the officers entered Jackson's apartment, West was clutching $100 in cash. Meanwhile, G.W. was transported by ambulance to the hospital where he was treated for a fracture of the left orbital floor and full-thickness lacerations to the scalp. While in the hospital, G.W. suffered a heart attack.

Jackson was initially charged with one count of first-degree aggravated robbery (armed with a dangerous weapon), Minn. Stat. § 609.245, subd. 1 (2006), and a second count of first-degree aggravated robbery (inflicts bodily harm upon another), *id.* Shortly before trial, the complaint was amended to add second-degree aggravated robbery, Minn.Stat. § 609.245, subd. 2 (2006); and for the heart attack, first-degree assault, Minn.Stat. § 609.221, subd. 1 (2006).

At trial, G.W. described the robbery and assault. He had been home alone watching TV when he answered a knock on the door. He recognized the woman he had seen earlier that day, and, as he opened the door, a man "rushed in and cracked" him on the eye with what he thought was a handgun. According to G.W., the man struck him on the head several more times as he fell to the floor, landing on his stomach. The man then pinned him to the floor, took his wallet, and directed the woman to take various items from his home to their car. When they were finished, the man told him to "stay there for ten minutes" and threatened to come back

and shoot him if he failed to comply. G.W. made an in-court identification of Jackson as the assailant. Also, at trial, a medical consultant involved in G.W.'s care at the hospital testified that G.W.'s head injuries fit within the legal definition of substantial bodily harm.

At the close of the State's case, the district court granted Jackson's motion for judgment of acquittal of the first-degree assault charge. The jury subsequently found Jackson guilty of the remaining charges. After the guilt phase of the trial concluded, for purposes of sentencing, the jury was instructed to answer three questions submitted by special verdict form: (1) did the aggravated robbery occur in G.W.'s home; (2) did G.W. sustain multiple blows to the head; and (3) did G.W. sustain an orbital fracture. After a short deliberation, the jury returned with affirmative answers to all three questions. At sentencing, the district court imposed an executed sentence of 210 months for first-degree robbery (armed with a dangerous weapon). The sentence was a double durational departure from the high end of the presumptive sentencing guidelines range. Specifically, the court based the departure on the severity of the victim's injuries and the invasion of the victim's zone of privacy.

Jackson appealed, challenging an evidentiary ruling, the sufficiency of the evidence in support of the conviction, and the propriety of the enhanced sentence. The court of appeals affirmed. *State v. Jackson*, No. A06–1001, 2007 WL 2245594 (Minn.App. Aug.7, 2007). We granted review of the sentencing issue.

I.

Jackson argues that the sentencing departure was improperly based on uncharged offenses of third-degree assault and burglary. Generally, we review a dis-

trict court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003). If the district court's reasons for departure are "improper or inadequate" and there is insufficient evidence in the record to justify the departure, the departure will be reversed. *Id.* Questions of law are reviewed de novo. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn.2002). Under *Blakely v. Washington*, 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the jury determines the facts that support the departure.

▪ The purpose of the Minnesota Sentencing Guidelines is to "establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." *Misquadace*, 644 N.W.2d at 68 (quoting Minn. Sent. Guidelines I). Accordingly, the "primary relevant sentencing criteria" are the "offense of conviction and the offender's criminal history." *Id.*

▪ To maintain uniformity and proportionality, departures from the presumptive guidelines sentence are discouraged. *Misquadace*, 644 N.W.2d at 68; *see* Minn. Sent. Guidelines I. The grounds provided by the guidelines for departure, "while nonexclusive, are intended to apply to a small number of cases, and each departure must be based on the offense of conviction rather than charges that were dropped or never alleged." *Misquadace*, 644 N.W.2d at 68; *see also* Minn. Sent. Guidelines II.A.01, cmt., II.D.103, cmt.; Dale G. Parent & Richard S. Frase, *Why Minnesota*

*Will Weather Blakely's Blast*, 18 Fed. Sent'g Rep. 12, 2005 WL 4001178, at *5 (2005) (noting that early case law reinforced the guidelines commission's key policy choices, including that "judges could not enhance a sentence based on offenses for which the defendant had not been charged or for which charges had been dropped").[1] Departures must comport with the guidelines criteria, which cannot be waived even by plea agreement. *Misquadace*, 644 N.W.2d at 72 (holding that departures from the guidelines "must be supported by substantial and compelling circumstances, and that a plea agreement—standing alone—is not a sufficient basis to depart from the sentencing guidelines").

▪ In Jackson's case, judgment was entered and the enhanced sentence imposed on the conviction for aggravated robbery while armed with a dangerous weapon. The departure from the presumptive guidelines sentence was based on the nature of the victim's injuries and commission of the crime in the victim's zone of privacy, his home. Regarding the nature of the injuries, the State presented expert evidence that the orbital fracture amounted to substantial bodily harm; and the jury was asked to find, and did find, that the victim sustained an orbital fracture. The infliction of substantial bodily harm is third-degree assault. Minn.Stat. § 609.223 (2006). A departure cannot be based on uncharged criminal conduct. *Misquadace*, 644 N.W.2d at 68; *State v. Simon*, 520 N.W.2d 393, 394 (Minn.1994) (explaining that a departure from the presumptive sentence for assault with a dangerous weapon cannot be based on an uncharged

---

1. Dale G. Parent served as the Executive Director of the Minnesota Sentencing Guidelines from its inception in September 1978 until May 1982. The guidelines went into effect in May 1980. Richard S. Frase is the Benjamin N. Berger Professor of Criminal Law at the University of Minnesota Law School. Parent & Frase, *supra*, 2005 WL 4001178, at *1.

assault with a dangerous weapon accompanied by infliction of substantial bodily harm). In addition, Minn.Stat. § 609.035 (2006) prohibits cumulative punishment for conduct that constitutes more than one offense. A departure would also have been improper had the offense been charged. *State v. Norregaard*, 384 N.W.2d 449, 450 (Minn.1986) (holding that separate sentences for aggravated robbery and third-degree assault were barred by Minn.Stat. § 609.035 (1984)).

 With regard to the zone of privacy, the nonconsensual entry into a dwelling with intent to commit a crime when a person (not an accomplice) is present is first-degree burglary. Minn.Stat. § 609.582, subd. 1(a) (2006). The fact that the offense takes place in a dwelling elevates the crime to a higher grade than it would otherwise be. *Compare id.*, subd. 2(a)(1) (burglary of a dwelling), *with id.*, subd. 3 (burglary of a building). The crime of burglary "carries with it some special risks to life and is not therefore purely a property offense." *State v. Hodges*, 386 N.W.2d 709, 711 (Minn.1986). Burglary is a serious crime, and punishment is allowed for both the burglary and the crime committed in the dwelling. Minn. Stat., § 609.585 (2006). Jackson's aggravated robbery was a severity level VIII offense, and the parties agree that he had a criminal history score of 4. The presumptive sentence was 88 months, with a presumptive sentencing range of 75–105 months. By application of the rules that set the criminal history score at zero for consecutive sentences, Minn. Sent. Guidelines II.F., the presumptive range for the burglary, a severity level VIII offense, was 41–57 months. The maximum available duration without any departure for the robbery and burglary, hypothetically speaking, was therefore 162 months. This is not meant as a comment on charging decisions, which are solely within the discretion of the prosecution, but rather as an observation that the guidelines do not contemplate enhanced sentences based on uncharged criminal conduct that would be far greater than what would otherwise be permitted based on charged criminal conduct. We therefore hold that Jackson's enhanced sentence was based upon impermissible departure factors.

## II.

 Pre-*Blakely*, when the reasons stated on the record for a departure were improper or inadequate, we independently examined the record to determine whether there was sufficient evidence " 'to justify departure' for legitimate reasons." *State v. Jones*, 745 N.W.2d 845, 851 (Minn.2008) (citation omitted). Post-*Blakely*, unless waived by the defendant, the fact-finding function is performed by the jury. *Id.* Accordingly, we reverse Jackson's enhanced sentence and remand for imposition of the presumptive sentence or, unless waived by Jackson, the empanelling of a resentencing jury to determine the existence of facts in support of legitimate aggravating factors for enhanced sentencing, including sentencing as a career or dangerous offender under Minn.Stat. § 609.1095 (2006) as indicated in the presentence investigation report. Minn. Sent. Guidelines II.D.b.(8) and (9); *see State v. Henderson*, 706 N.W.2d 758, 762 (Minn. 2005) (holding that enhanced sentencing under the career offender statute required jury findings). As a matter of judicial policy in Minnesota, "a court cannot 'impose on a defendant who has secured a new trial a sentence more onerous than the one he initially received.' " *Hankerson v. State*, 723 N.W.2d 232, 241 (Minn.2006) (quoting *State v. Holmes*, 281 Minn. 294, 296, 161 N.W.2d 650, 652 (1968)). Accordingly, on remand, the State cannot seek

and the court cannot impose a sentence in excess of 210 months.

## III.

In the interests of judicial economy, we address Jackson's argument that a 210–month sentence is disproportionate. This argument implicates our decision in *State v. Evans,* in which we concluded that, generally, upward durational departures should not exceed double the presumptive sentence length. 311 N.W.2d 481, 483 (Minn.1981). *Evans* was a sentencing appeal related to convictions of aggravated robbery involving different elderly victims and different incidents in November 1980. *Id.* at 482. The defendant's criminal history score was zero, the presumptive sentence under the sentencing guidelines in effect at the time of the offenses for aggravated robbery with a criminal history score of zero was 24 months in prison, and consecutive sentencing was not a departure. *Id.* Thus, the guidelines permitted a 48–month sentence without departure. *Id.* The trial court sentenced the defendant to consecutive terms of 15 years each, or a total of 30 years. *Id.* This court reduced the sentence to 96 months, adopting the standard that *"generally* in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length." *Id.* at 483. We also stated, however, that in "unusually compelling" cases "an even greater degree of departure will be justified." *Id.*

Jackson argues that the guidelines sentencing system has changed considerably over the past 27 years, increasing dramatically the presumptive duration of sentences for serious offenses. He calls attention to the presumptive sentencing ranges that now extend 20 percent above the presumptive fixed sentence.[2] His brief includes charts comparing the 1981 presumptive durations and ranges for serious offenses with the 2007 presumptive durations and ranges for the same offenses to illustrate the exponential increase in sentence durations by application of the *Evans* rule. He suggests that the *Evans* rule is no longer necessary given the wide presumptive sentencing ranges that cover a broader range of criminal conduct than the minimum to constitute the offense. In the alternative, Jackson proposes modifications to the rule, such as limiting any departure to twice the presumptive fixed duration or calculating the departure with a criminal history of zero to avoid "double counting" the offender's criminal record.

2. Under the sentencing guidelines, sentences are determined by use of a grid system. Minn. Sent. Guidelines IV. The vertical axis on the grid tracks the severity of the offense, while the horizontal axis tracks the offender's criminal history. To determine the proper sentence to be imposed in any given case, a sentencing court locates the cell on the grid that corresponds to the offense level and the offender's criminal history. Not counting the cells applicable to relatively minor offenses, each cell on the grid contains three different numbers. The lowest number is the minimum guidelines sentence for that particular cell, the highest number is the maximum guidelines sentence, and the middle number is what might be referred to as the "presumptive fixed sentence." Originally the presumptive sentencing range for an aggravated robbery with a criminal history score of zero (which was the situation in *Evans,* 311 N.W.2d at 482) was 23–25 months. It is now 41–57 months. *See* Minn.Stat. § 244.09, subd. 5(2) (2006) (requiring Sentencing Commission to set presumptive fixed sentence as well as a sentencing range extending 20 percent above and 15 percent below that presumptive fixed sentence). All three numbers in any given cell constitute an acceptable sentence based solely on the offense at issue and the offender's criminal history score-the lowest is not a downward departure, nor is the highest an upward departure. Minn. Sent. Guidelines IV. In Jackson's case, with a criminal history score of 4, the presumptive sentencing range, which was 60–70 months under the original formulation of the guidelines, is now 75–105 months.

We understand that in 2005 the legislature substantially broadened the sentencing ranges. When the guidelines were developed, statutory authority was granted for a 15 percent sentencing range. Minn. Sent. Guidelines Comm'n, Report to the Legislature at 6 (Jan.2005). The Commission chose a narrower range. *Id.* The 2005 legislation required a sentencing range of 35 percent: 20 percent above the presumptive fixed sentence and 15 percent below the presumptive fixed sentence. Act of Aug. 1, 2005, ch. 136, art. 16, § 1, 2005 Minn. Laws 901, 1113 (codified at Minn. Stat. § 244.09, subd. 5(2) (2006)). For example, a severity level IX offense with a zero criminal history score now has a sentencing range of 29 months (74 to 103), and the same offense with a criminal history of 6 or more has a range of 54 months (135 to 189). "[P]reviously, all cells at level IX had a width [of 10] months." Parent & Frase, *supra*, 2005 WL 4001178, at *8. The intent of the legislation was to reduce aggravated durational departures. *Id.*

 If a jury finds facts that support a departure from the presumptive sentence, the court may exercise discretion to depart but is not required to depart. Minn. Sent. Guidelines II.D.; *see State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981) ("It would be a rare case which would warrant reversal of the refusal to depart."). Departures from the presumptive sentence are justified *only* when substantial and compelling circumstances are present in the record. *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn.2002); Minn. Sent. Guidelines II.D. To achieve uniformity and proportionality, whether sentences above the broadened presumptive maximum merit stricter scrutiny is an open question. Appellate courts do have the authority to modify a sentence on many grounds, including that the sentence is inconsistent with statutory requirements, Minn.Stat. § 244.11, subd. 2(b) (2006), or that modification is "in the interest of 'fairness and uniformity.'" *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn.2006) (quoting *State v. Vazquez*, 330 N.W.2d 110, 112 (Minn. 1983)).

As for the *Evans* doubling rule, it may be that the rule is in need of serious reevaluation, but we question whether this court is, at this time, the proper forum for doing so. This is especially true in light of the fact that the Guidelines Commission has collected and analyzed information on actual sentencing practices over the more than 25 years the guidelines have been in effect and makes recommendations to the legislature on various aspects of sentencing. Minn.Stat. § 244.09, subd. 6 (2006). We believe, in the first instance, that the continued efficacy of the *Evans* departure rule, if any, is a question more properly addressed by the Commission.[3]

Reversed and remanded.

---

**3.** The dissent asserts that our interpretation of the sentencing guidelines system eliminates aggravating sentencing factors of particular cruelty and zone of privacy. We believe the dissent reads the majority too broadly. The jury in this case was not asked to find particular cruelty beyond a reasonable doubt. *See, e.g., Kevin S. Burke, State v. Dettman: The End of the Sentencing Revolution or Just the Beginning?*, 33 Wm. Mitchell L.Rev. 1331, 1342–43 (2007) (noting issues in defining "cruelty" for sentencing juries). As for zone of privacy, cases referencing burglaries of dwellings have involved particular cruelty. *E.g., State v. Winchell*, 363 N.W.2d 747, 750 (Minn.1985) (affirming sentencing departure when robbery occurred in late-night home invasion, defendant and his accomplice bound the victims, defendant put three people in fear, a young child was present, defendant held a gun next to a victim's head, and rape was discussed). *Cf. State v. Blanche*, 696 N.W.2d 351, 379 (Minn.2005) (affirming sentencing departure when, in an attempt to assassinate a rival gang member, ten bullets were indiscriminately fired in a residential area and a particularly vulnerable child was

GILDEA, Justice.

The majority interprets Minnesota's sentencing system in a manner that effectively eliminates the well-established aggravating sentencing factors of particular cruelty and zone of privacy. The majority's interpretation is inconsistent with our precedent and it has significant and adverse effects on the criminal justice system. I respectfully dissent.

This action arises from the brutal beating and robbery of a 67–year victim, G.W., in his home. The record reflects that on November 6, 2005, a young woman came to G.W.'s home in the morning hours, claiming car trouble and asking to use his telephone. G.W. agreed to help the woman, took her into his home, and let her use the telephone. After using the phone, the young woman left, only to return again that evening.

When G.W. saw the same young woman at his door, he opened it only to be met by Jackson, who "rushed in and cracked [G.W.] on the left eye" with what appeared to be a handgun. Jackson proceeded to hit G.W. on the right side of the forehead and the jaw, and then more times on the head. After G.W. fell to the floor, Jackson knelt on his back, took his wallet, and directed that the woman retrieve guns that G.W. kept in his home.

As a result of the beating, G.W. suffered a severe laceration on the right side of his head and the orbital socket of his left eye was "blown out," meaning that Jackson fractured G.W.'s eye socket as well as the bones directly underneath his left eye. When the police arrived, they found G.W. bleeding profusely from the wound on his head, and he had to be taken to the hospital by ambulance.

Based on the jury's factual findings that Jackson inflicted multiple blows to G.W.'s head, fractured the orbital socket around his left eye, and committed the robbery inside G.W.'s home, the district court imposed an aggravated sentencing departure of 210 months. At the sentencing hearing, the court articulated that it was imposing an aggravated departure because "the crime was committed within [G.W.'s] zone of privacy" and because of "the injuries inflicted." The majority holds that the district court erred. I disagree. The abuse of discretion standard controls our review of a district court's decision to impose a sentencing departure. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003). A sentencing departure must be justified by "substantial and compelling circumstances" in the record that make the facts in the case different from the presumptive sentence, and we have held that it is generally proper for courts to consider that the defendant committed the offense in a particularly serious way in imposing an upward departure. *Id.* Because the upward departure was not an abuse of discretion, I would uphold the sentence.

## I.

The district court's decision to depart upward on a sentence for aggravated robbery in the first degree, committed with a dangerous weapon, based on the severe injuries inflicted and invasion of the victim's zone of privacy is consistent with our

shot to death while playing on a friend's front porch). We disagree with the dissent's claim that we have created a new rule. As we explained, one of the Guidelines Commission's key policy choices was that an enhanced sentence could not be "based on offenses for which the defendant had not been charged." Parent & Frase, *supra,* 2005 WL 4001178, at *5. We believe this policy choice is as significant following the 2005 legislation that substantially broadened the sentencing ranges as it was with the original sentencing ranges.

rule that "it is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced." *State v. Cox,* 343 N.W.2d 641, 643–44 (Minn.1984) (holding that the gratuitous infliction of serious injuries that exceeded the level of injury required to prove the offense warranted an upward departure); *see also Taylor,* 670 N.W.2d at 588 (noting that a sentencing departure may be based on multiple acts of uncharged sexual penetration, which were part of the offense for which the defendant was charged and convicted); *State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983) (explaining that a court may rely on the facts underlying a particular offense as a basis for concluding that the offense of which the defendant was convicted was committed in "a particularly serious or cruel way"); *State v. Rott,* 313 N.W.2d 574, 575 (Minn.1981) (explaining that the district court could base its upward durational sentencing departure on uncharged offenses that the defendant admitted committing); *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981) (holding that the district court could base its upward durational sentencing departure on conduct which indicated that the victim had been treated with particular cruelty).

Notwithstanding the precedent discussed above, the majority holds that it was improper for the district court to consider Jackson's decision to commit the robbery (the offense of conviction) in a manner that inflicted gratuitous pain on the victim and in a way that invaded the victim's zone of privacy because this conduct supports the uncharged offenses of third-degree assault and burglary. I disagree.

In my view, the departure in this case is consistent with the double upward departure we affirmed in *State v. Winchell,* 363 N.W.2d 747 (Minn.1985). In that case, the defendant pleaded guilty to aggravated robbery in exchange for the dismissal of other charges, including burglary and assault with a dangerous weapon. *Id.* at 748. The district court imposed a double upward departure based in part on the fact that the defendant " 'gratuitously inflicted particular cruelty on the victims during the course' " of the robbery, and the fact that the robbery " 'was committed in the privacy and security of the victim's own home.' " *Id.* at 749. We did not prohibit the court from departing even though the aggravating factors also supported other crimes. To the contrary, we affirmed the sentence because the departure was based on the "facts relating to the conduct underlying the offense to which the defendant pleaded guilty." *Id.* at 750. The majority does not articulate any sound basis for a decision to depart from this precedent. I would follow our precedent and affirm.[1]

---

1. The majority contends that it is not creating a new rule and attempts to find support for this conclusion in a law review article's position about what the Guidelines provide. But the article the majority cites specifically departs from the rule the majority writes today by noting that courts "could depart on the basis of non-charged offenses if the defendant admitted them on the record." Dale G. Parent & Richard S. Frase, *Why Minnesota Will Weather Blakely's Blast,* 18 Fed. Sent'g Rep. 12, 2005 WL 4001178, at *5 (2005) (citing *State v. Rott,* 313 N.W.2d 574, 575 (Minn. 1981), and *State v. Garcia,* 302 N.W.2d 643 (Minn.1981)). And perhaps more important-

ly, the article cites *State v. Brusven,* 327 N.W.2d 591 (Minn.1982), as one of the authorities for the assertion that judges could "not enhance a sentence based on offenses for which the defendant had not been charged or for which the charges had been dropped." Parent & Frase, *supra,* 2005 WL 4001178, at *5. In *Brusven,* however, we acknowledged the rule of law I apply here and the one that the majority is now writing out of existence. *Id.* at 593 (disapproving of sentencing court's departure based not on offense of conviction but based on a separate offense that had been dismissed and distinguishing that situation from one where "the facts underlying a par-

The majority's decision to depart from our precedent also effectively eliminates long-standing and well-accepted departure factors. I turn to these factors, particular cruelty and zone of privacy, next.

### A. Particular Cruelty

The Guidelines provide that there may be departures from presumptive sentences where "there exist identifiable, substantial, and compelling circumstances." Minn. Sent Guidelines II.D. While the list of aggravating factors does not purport to be exhaustive, importantly for purposes of this case, one factor specifically listed as a basis for upward departure is where "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.b(2).[2] It is well established that gratuitous infliction of pain qualifies as "particular cruelty." *State v. Smith,* 541 N.W.2d 584, 590 (Minn.1996) (upholding an upward sentencing departure where the manner in which the defendant committed the robbery included punching the victim into unconsciousness and then kicking him

as he lay on the ground); *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981). Consequently, the district court did not abuse its discretion when it concluded that Jackson's gratuitous infliction of pain justified an upward durational sentencing departure, because this conduct demonstrated that Jackson committed the robbery in a particularly cruel way.[3]

Relying on *State v. Misquadace,* 644 N.W.2d 65 (Minn.2002), the majority asserts that "[a] departure cannot be based on uncharged criminal conduct." But consideration of evidence pointing to the defendant's guilt of some other uncharged offense is only improper if that evidence "does not support the conclusion that the defendant committed the offense in question in a particularly serious way." *Cox,* 343 N.W.2d at 643.

Moreover, *Misquadace* does not support the majority's result. In *Misquadace,* the issue was whether a plea agreement, standing alone, could provide a substantial and compelling justification for departure. 644 N.W.2d at 69. Citing Minn. Sent.

---

ticular offense" support the conclusion "that the offense of which the defendant was convicted was committed in a particularly cruel way").

**2.** The legislature may modify the Guidelines, but it has taken no action to cast doubt on the Guidelines' inclusion of the particular cruelty departure ground. *See* Minn.Stat. § 244.09, subd. 11 (2004) (noting that modifications to the Guidelines shall be submitted annually to the legislature and that such modifications "shall be effective * * * unless the legislature by law provides otherwise").

**3.** Although the sentencing jury was not specifically asked if Jackson committed the offense with "particular cruelty," the jury was asked to find facts about the injuries the victim suffered. The district court appropriately used those facts as the basis to depart. *See State v. Cox,* 343 N.W.2d 641, 645 (Minn. 1984) (upholding departure where defen-

dant's "conduct was a form of gratuitous cruelty which was unjustified within the context of the crime"). The majority seemingly suggests that had the sentencing jury decided that Jackson had committed the aggravated robbery with "particular cruelty," a departure would have been appropriate in this case. That cannot be so under the rule of law the majority writes today. Even if the question put to the sentencing jury had been phrased "Did Jackson commit the aggravated robbery with particular cruelty," under the majority's new rule of law, the district court would not have been able to depart because the underlying conduct at issue—the infliction of the injuries—would still have been conduct that could have been charged as an assault. The phrasing of the question does not dictate the result under the majority's new rule. The fact that the conduct, no matter what the jury calls that conduct, could have been charged as some other offense is why the majority holds that there could be no departure here.

Guidelines cmt. II.A.01 (stating that "the offense of conviction is the standard from which to determine severity" and that "departures from the guidelines should not be permitted for elements of offender behavior not within the statutory definition of the offense of conviction" because "serious legal and ethical questions would be raised if punishment were to be determined on the basis of alleged, but unproven, behavior, and prosecutors and defenders would be less accountable in plea negotiation"), we explained that departures must be based on the offense of conviction. *Id.* at 68. We further explained that "[t]he question presented to the sentencing court when considering a departure is whether the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question." *Id.* (citing *Cox*, 343 N.W.2d at 643). Ultimately, we concluded that a plea agreement standing alone could not be used to depart because it does not demonstrate that the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question. *Id.* at 71.

Nothing we said in *Misquadace* called into question the well-established principle set forth above that the district court is permitted to depart based on the way in which the offense is committed. In addition, the concerns regarding plea negotia-

tions at issue in *Misquadace* and "alleged, but unproven, behavior" articulated in Minn. Sent. Guidelines cmt. II.A.01 are not implicated in this case because Jackson did not plead guilty and the sentencing jury found that the State proved the aggravating sentencing factors beyond a reasonable doubt.

The majority also relies on *State v. Norregaard*, 384 N.W.2d 449, 450 (Minn.1986), and asserts that had the State charged Jackson with third-degree assault, it would have been improper for the district court to consider Jackson's decision to gratuitously inflict substantial bodily harm on the victim. But by holding that it is improper for a district court to consider the beating Jackson inflicted on G.W. when such conduct is either uncharged, as in this case, or charged, as in *Norregaard*, the majority has effectively eliminated the aggravating factor of particular cruelty, which is expressly recognized in Minn. Sent. Guidelines II.D.b(2).[4]

Every time a defendant commits the offense of conviction in a manner that gratuitously inflicts bodily harm, the State can arguably charge the defendant with some form of assault. Minn.Stat. §§ 609.221–24 (2006). According to the majority, if the State fails to charge the defendant with assault, the sentencing court cannot consider the defendant's gratuitous infliction of physical injury. Yet, if the State charges and convicts the defendant of as-

---

**4.** The majority also cites *State v. Simon*, 520 N.W.2d 393 (Minn.1994), in support of its proposition that "[a] departure cannot be based on uncharged criminal conduct." But in *Simon*, we were concerned with manipulation by the State. Specifically, we noted that the State could have charged the defendant with the "more serious" crime of assault resulting in substantial bodily harm, for which the maximum sentence was 10 years. *Id.* at 394. The State instead proceeded with a charge of assault with a dangerous weapon, which was punishable by up to 7 years in

prison, and then after the defendant pleaded guilty, argued for departure based on the fact that substantial bodily harm was committed as part of the assault. *Id.* The manipulation at issue in *Simon* does not exist in this case. Here, the offense the majority contends could have been charged was assault in the third degree, which is a severity level IV offense punishable by up to 5 years in prison, and the offense that was charged and for which sentence was imposed, aggravated robbery in the first degree, was a severity level VIII offense punishable by up to 20 years in prison.

sault, the majority asserts that our decision in *Norregaard* and Minn.Stat. § 609.035 (2006) prohibit the sentencing court from imposing punishment based on the assault conviction because it arose out of the same behavioral incident. Thus, there is no way under the majority's new rule for a district court to factor a violent beating into a sentencing decision. In my view, this new rule writes the "particular cruelty" factor out of the Guidelines. But in the absence of a constitutional challenge, we have no authority to rewrite the Guidelines. *See State v. Shattuck,* 704 N.W.2d 131, 146 (Minn.2005) (severing Guidelines provision that was determined to be unconstitutional).[5]

Moreover, *Norregaard* does not compel the rule the majority writes today, and I would not interpret *Norregaard* in a manner that effectively rewrites the Guidelines. In *Norregaard,* the State charged the defendant with both aggravated robbery, Minn.Stat. § 609.245 (2006) (robbery accompanied by infliction of "bodily harm"), and third-degree assault, Minn. Stat. § 609.223 (2006) (assault involving infliction of "substantial bodily harm"). 384 N.W.2d at 449. After convicting the defendant of both offenses, the district court imposed two separate sentences. *Id.* We held that imposition of two separate *sentences* violated the statutory prohibition against multiple punishments contained in Minn.Stat. § 609.035 (2006) because "petitioner was convicted of the more serious form of robbery and received additional punishment for the robbery because it was a robbery accompanied by the infliction of bodily harm." *Norregaard,* 384 N.W.2d at 450; *see also State v. Williams,* 608 N.W.2d 837, 841 (Minn.2000) (explaining that Minn.Stat. § 609.035 protects defendants from multiple sentences for conduct arising out of the same behavioral incident).

The result in *Norregaard* was dictated not by the Guidelines, but by section 609.035. 384 N.W.2d at 450. In this case, by contrast, the legislative decision reflected in section 609.035—that an offender may not be sentenced for separate crimes that arise out of the same behavioral incident—is not at issue. Jackson did not receive two sentences. He received one sentence based on the way in which he committed one crime, aggravated robbery.[6]

The majority's conclusion that section 609.035 prohibits the beating from being used to aggravate the sentence of aggravated robbery would mean that the legislature intended that statute to nullify the particular cruelty departure provision in the Guidelines. The legislature did not provide for the nullification of the particular cruelty departure ground in the text of section 609.035. And our implication of such a nullification would be inconsistent with our obligation to give effect to all legislative enactments. *See Owens v. Federated Mut. Implement & Hardware Ins.,* 328 N.W.2d 162, 164 (Minn.1983); *see also* Minn.Stat. § 645.26, subd. 1 (2006) ("When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both."). Rather than reading section 609.035 to nullify the "particular cruelty" aggravating factor, I would read the statute according to its plain terms as prohibiting multiple punishments, i.e., multiple sentences, for separate crimes committed

---

5. Jackson does not assert that the "particular cruelty" aggravating factor violates his constitutional rights.

6. Jackson was convicted of two counts of aggravated robbery, but consistent with section 609.035, the district court imposed sentence on only one count.

as part of the same behavior incident.[7] Such an interpretation gives effect to both the statute and the departure provision in the Guidelines.

### B. Zone of Privacy

The majority's analysis of the zone of privacy factor is also flawed. It is well established that departures from the presumptive sentence are appropriate where a defendant invades the zone of privacy that surrounds the victim's home. *See State v. Blanche,* 696 N.W.2d 351, 379 (Minn.2005); *Winchell,* 363 N.W.2d at 750. But every time a defendant commits a crime within a victim's zone of privacy, the State can arguably charge the defendant with burglary. Minn.Stat. § 609.582 (2006). While the majority contends that it is not treading onto the prosecutor's discretion in charging, it seems to me that is precisely where the majority is going. And, as the court of appeals wisely noted, it is not for courts "to supplant the prosecutor's charging function," in the absence of evidence of "deliberate discrimination." *State v. Jackson,* 2007 WL 2245594, at *7 (Minn.App. Aug.7, 2007) (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *State v. Herme,* 298 N.W.2d 454, 455 (Minn.1980)).[8]

The majority also seems to conclude that a departure is not appropriate based on the invasion of the zone of privacy because "punishment is allowed for both the burglary and the crime committed in the dwelling," and because the aggravated sentence imposed in this case is greater than the sentence that could have been imposed had Jackson been sentenced on both burglary and aggravated robbery.

The majority argues "that the guidelines do not contemplate enhanced sentences based on uncharged criminal conduct that would be far greater than what would otherwise be permitted based on charged criminal conduct." Had Jackson been given consecutive sentences, assuming he was charged and convicted with aggravated robbery and burglary, the presumptive sentence would have been 162 months. Because 210 months is apparently "far greater" than 162 months, the majority seemingly concludes that the district court erred. But the 162–month sentence is not an aggravated sentence; it is the presumptive sentence. The majority's analysis does not take into account that even in the hypothetical it poses the State could seek a departure based on the way in which the crimes were committed. Thus, in my view, it is not proper to conclude that an aggravated sentence is unlawful because it exceeds the presumptive sentence. If that were the law, there would no such thing as an aggravated sentence, and again this would write provisions out of the Guidelines, something that it is not within the province of this court to do.

### II.

In the interests of judicial economy, the majority considers Jackson's argument that this court should reconsider the *Evans* rule, which limits upward durational sentencing departures to twice the presumptive sentence unless there are "unusually compelling" circumstances. *See State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). After describing the legislature's recent expansion of the presumptive sentencing ranges, the majority concludes that the *Evans* rule may be "in need of

---

7. This reading is consistent with other provisions in the statute wherein exceptions are provided to the prohibition against multiple sentences. *See* Minn.Stat. § 609.035, subd. 2 (providing for consecutive sentences).

8. Jackson makes no claim that the charging decisions at issue in this case were discriminatory.

serious reevaluation," but that the continuing efficacy of the rule is a question which should be addressed, in the first instance, by the Minnesota Sentencing Guidelines Commission. We created the *Evans* rule through the exercise of our supervisory powers. To suggest that the Commission has the authority to modify this rule raises serious separation of powers issues. Although I conclude that there is no need to reevaluate the *Evans* rule, it is clear that questions regarding the continuing efficacy of this rule should be answered by this court and this court alone.

ANDERSON, G. Barry, Justice (dissenting).

I join in the dissent of Justice Gildea.

DIETZEN, Justice (dissenting).

I join in the dissent of Justice Gildea.