*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0291**

State of Minnesota,
Respondent,

vs.

Ronald Paul Collum,
Appellant.

**Filed February 17, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-12-11491

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Condominium maintenance worker Ronald Collum sold numerous pieces of sterling silverware to a metal recycling company in exchange for about $45,000 during a

period in which 17 residents of the condominium complex had their silverware stolen. A jury found Collum guilty of theft, and the district court sentenced him to a stayed 36-month prison term—nearly triple the duration of the presumptive guidelines sentence. Collum appeals, challenging the sufficiency of the circumstantial evidence supporting the jury's verdict and challenging his sentence. Because circumstances proved by the state are consistent only with Collum's guilt, we affirm the conviction. And because the crime included severe aggravating factors supporting the district court's decision to depart upward, we affirm the sentence.

## FACTS

Several residents of the Woodbine condominium complex in Minnetonka, most of whom were elderly, began reporting to police in August 2011 that their sterling silverware was missing. Police investigated and learned that someone had stolen silverware sets from 17 different units, but none of the homes had been entered by force. The investigation eventually focused on Ronald Collum. Collum had served as the complex's maintenance worker during the theft period. Police learned that Collum had access to the homes and that between February and May 2012 he had collected about $45,000 in nine very large sterling-silverware sales transactions. The state charged Collum with one count of theft of over $5,000.

At Collum's trial, Minnetonka police sergeant Andrew Gardner testified that he was a detective in 2011 and investigated the thefts. He explained that all the victims reported the missing sterling silverware from homes that the thief did not forcibly enter. And he detailed how Collum had a key to the units and had sold silverware to metal

dealer Enviro-Chem on multiple occasions after the thefts occurred. Sergeant Gardner told the jury that he attempted to contact Collum to get his statement but that Collum never returned his calls.

The jury also heard from 12 of the victims and the daughter of a thirteenth victim who had passed away before the trial. The victims ranged in age from 67 to 95 years old. All the victims testified that their silverware had been stolen before August or September 2011. Every set of the stolen silverware was sterling silver except for one set, which was stainless steel. Several of the victims explained that the condominium complex units were on a security system that gave the maintenance caretaker (Collum) access to the units with a single master key. Residents could opt out of this system and purchase their own locks. At least ten of the testifying victims were on the master-key system, and those who were not had separately provided Collum a key to their units. Two of the victims had alarm systems and had given Collum the alarm codes.

Eight of the victims spent all or part of the 2010-2011 winter away from Minnesota. Most of these had arranged for Collum to check on their unit while they were away. Eight victims testified that they each kept their silverware in a box, which the thief mostly emptied and left behind. Five victims noticed that some or all of their knives had also been left behind.

Kari Whitson, who became the Woodbine manager and caretaker after Collum left employment in 2011, also testified. Whitson explained that, as caretaker, she could access individual units with a master key provided for emergencies. She also explained that

3

security measures prevent anyone from entering the building without a key and that only residents and employees are issued building keys.

Two Enviro-Chem managers testified. Owner Brian Meyer explained that the company buys precious metal objects at 85% of the market value of the metal. The company melts the metal objects and recasts the metal into bars before reselling it. Enviro-Chem did not require sellers of the objects to prove ownership, but it did require identification. Meyer explained that sterling silverware is valuable because the pieces are about 92.5% silver, except knives, which have silver handles but steel blades. He testified that sterling silver sold at an unusually high price in 2011. Meyer produced eight receipts reflecting sales of sterling silverware by Collum and an electronic record of a ninth sale. The sales totaled approximately $45,000. Meyer testified that it was unusual for a customer to make repeated sales totaling $45,000 over a span of only four or five months.

Michael Perron was operations manager at Enviro-Chem, and he bought silverware from Collum at least five times. Perron testified that Collum came alone and brought only silverware. He told the jury that Collum told him he got the silverware sets from family and friends. Collum never brought the silverware in the wooden boxes in which silverware is customarily contained. Instead, Collum used shoeboxes. In Perron's 28 years working for the company, he had never experienced so many sets of silverware sold by any one person as were sold by Collum.

Collum did not testify. But he called his son Paul and wife Kathryn to the stand. Paul testified that his parents collect antiques. He said they would go to auction sales, buy antique dishes and furniture, and resell them. He said that his mother had lots of antique

silverware and dishes. Kathryn testified that she and her husband collected antiques and that she collected old dishes and silverware. She said that she bought incomplete sets of silverware to go with her mismatched dishes. Kathryn said that in 2011 she incurred substantial dental costs and that the couple decided to cover the cost by selling their silver antiques. Collum, she said, sold the silver over a three-month period. And she claimed that Collum's aunt and mother had given them sets of sterling silverware.

The jury found Collum guilty of theft greater than $5,000. Collum waived his right to a sentencing jury under *Blakely*, electing to have the district court make sentencing findings. The district court departed upward in sentencing because it found that the victims' ages made them particularly vulnerable. It sentenced Collum to prison for 36 months, staying execution for five years on probationary terms including 365 days in jail. It found that Collum's crime "took place over a period of time" and that he "had to make the independent decision to go into people's homes multiples times." The district court also found that Collum picked his victims "because of their age, because [he] knew their schedule, because [he] knew . . . what to do and not get caught, and it almost worked."

Collum appeals his conviction and sentence.

# D E C I S I O N

Collum argues that the jury found him guilty on insufficient evidence and that the district court had no basis to depart substantially upward from the presumptive sentence under the sentencing guidelines. Neither argument leads us to reverse.

# I

Collum maintains that the circumstantial evidence presented at trial does not support his conviction of theft of more than $5,000. He does not dispute that the evidence proved that the thefts occurred; he argues only that the evidence did not allow the jury to identify him as the thief.

Our circumstantial-evidence review involves two steps. We first identify the circumstances proved, deferring to the jury's acceptance of those circumstances and disregarding evidence inconsistent with them. *State v. Hokanson*, 821 N.W.2d 340, 354 (Minn. 2012), *cert. denied*, 133 S. Ct. 1741 (2013). We next independently examine the reasonableness of the inferences one might draw from the proved circumstances, including inferences that support any hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). We will affirm the conviction if the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis of innocence. *State v. Fairbanks*, 842 N.W.2d 297, 307 (Minn. 2014). Despite the stricter review of convictions that depend on circumstantial evidence, we remain deferential to the jury, which was "in the best position to evaluate circumstantial evidence." *Id.*

We can readily identify the circumstances proved here. Circumstances proved are only those that are consistent with the jury's verdict. *State v. Hawes*, 801 N.W.2d 659, 670 (Minn. 2011). The verdict and record inform us of the circumstances proved. The silverware was stolen from the victims' homes during their absence by someone with the ability to enter without force. Collum had the unique means to enter each home without force. The silverware was stolen from homes without triggering any alarm. Collum had

6

been given the access codes to the burglarized homes that had alarms. Collum had experience with and apparent access to antique vendors and knowledge of sterling silver specifically. The thief took the silverware for its sterling-silver qualities, leaving behind those pieces containing the least sterling silver. Collum sold sterling silverware to a metal recycling company after the sterling silverware thefts. Collum's silverware sales were at an unprecedented large quantity consistent with the large amount of sterling silverware stolen from the homes to which he had access.

We can also discern the reasonable inferences to be drawn from the direct and circumstantial evidence in light of the jury's verdict. The jury necessarily believed that the silverware Collum sold to Enviro-Chem was the silverware taken from the victims. One can reasonably infer from the circumstances proved that the thief intended to sell the bounty as recyclable silver, not for resale as usable silverware; that Collum was motivated by the added family expense of his wife's contemporaneous dental bills; that Collum alone possessed the means and the knowledge necessary to enter all of the homes without using force and without triggering any alarm; that Collum knew when the victims' homes would be vacant; that Collum entered the homes without arousing suspicion; that Collum chose to sell the silverware to a recycler rather than to antique dealers in part to ensure that the stolen silverware would become unidentifiable; and that Collum used his special knowledge and intentionally left the knives behind knowing of their lesser value. These reasonable inferences point to guilt.

What reasonable inferences suggest innocence? Collum's wife and son tried to suggest one. They testified that the Collums had been collecting silverware for years and

7

that it was this silverware that Collum sold to Enviro-Chem. The jury clearly did not accept this testimony as credible, and so we do not rely on it to develop a reasonable hypothesis if innocence. Collum told the silver dealer that family and friends had given him the silverware, not that he had collected it over the years while antiquing. And it is unreasonable to infer that family and friends gave Collum $45,000 worth of silverware. It is also unreasonable to infer that Collum, who valued the antique quality of silverware, would, without some motive (like concealing and profiting from a theft), sell his antique silverware merely for 85% of its melt-down value as silver.

In sum, the circumstances proved lead to reasonable inferences that support only the jury's verdict and compel us to affirm the conviction.

## II

Collum also challenges his sentence. He first maintains that the district court erred by departing upward from the presumptive sentence under the guidelines. And he also maintains that the district court erred by imposing a sentence greater than double the length of the presumptive guidelines sentence.

The district court based its decision to grant the state's motion for an upward sentencing departure on its finding that the victims were "particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." *See* Minn. Stat. § 244.10, subd. 5a(a)(1) (2012). We review a district court's departure from a guidelines sentence for an abuse of discretion. *State v. Jackson*, 749 N.W.2d 353, 356–57 (Minn. 2008). But whether a particular reason justifies an upward departure is a question of law subject to de novo review. *See id.* at 357.

Exploiting a victim's vulnerability is an aggravating sentencing factor. *See State v. Saharath*, 355 N.W.2d 312, 314 (Minn. App. 1984). "Elderly victims have been found to be particularly vulnerable" under the sentencing guidelines. *State v. Kimmons*, 502 N.W.2d 391, 397 (Minn. App. 1993), *review denied* (Minn. Aug. 16, 1993). Collum contends that although he knew the age of his victims, he did not exploit their vulnerability. He argues that his crime was one of opportunity in which he targeted condominiums that just happened to be owned by older residents.

Several characteristics of Collum's crime contradict his argument. Although Woodbine was generally becoming an older community, trial testimony indicated that the complex residents varied substantially in age. Collum stole from 12 testifying victims who had all reached or passed a customary retirement age. Nearly all of the victims also testified that they relied on Collum to enter their apartment in case of emergency. The particular vulnerability of the victims was a substantial factor in Collum's ability to accomplish the crime. *See State v. Gardner*, 328 N.W.2d 159, 162 (Minn. 1983) (holding that particular vulnerability of the victim must be a substantial factor in accomplishing the crime in order to support an upward departure). Collum knew the victims' ages and their need for assistance, and it was their reliance on him that gave him the opportunity to commit the theft. These facts support the district court's finding that Collum "picked on those who were more likely to be forgetful, trusting, [and] isolated" due to their age.

Collum next argues that the district court erred by ordering the 36-month stayed prison sentence, which was a greater-than-double durational departure from the presumptive sentence of 366 days, stayed. A district court abuses its discretion by

9

departing from a guidelines sentence when there is insufficient evidence in the record to justify the departure or when it bases the departure on improper considerations. *Jackson*, 749 N.W.2d at 357. The Minnesota Sentencing Guidelines provide presumptive ranges for determining sentence lengths. Generally, a district court cannot order a sentence longer than the upper departure limit of "double the maximum presumptive sentence length." *Neal v. State*, 658 N.W.2d 536, 544 (Minn. 2003) (citing *State v. Evans*, 311 N.W.2d 481, 483 (Minn. 1981)). But when severe aggravating factors exist, greater-than-double departures are permitted. *Id.* The supreme court has explained that "there is no clear line that marks the boundary between 'aggravating circumstances' justifying a double departure and 'severe aggravating circumstances' justifying a greater than double departure." *State v. Norton*, 328 N.W.2d 142, 146 (Minn. 1982).

Collum maintains that, at most, his case involved only a single aggravating factor—particular vulnerability of the victims—which he says was not severe. But the district court appeared to rely on more than just this factor in ordering the greater-than-double departure. It noted that Collum's crime occurred over a long period, that he had to go into people's homes multiple times to gather information before acting on it, that his crime included many victims, and that Collum violated the victims' trust in him. We agree with the district court that this was not the usual case because Collum stole "multiple times" from "so many people." Each entry and individual theft might have been charged as a separate crime. *See* Minn. Stat. § 609.52, subd. 3(5) (2012) (affording a prosecutor discretion to aggregate the value of money or property received by a defendant to be charged as one offense rather than multiple offenses). These have all

10

been recognized as severe aggravating factors supporting a greater-than-double departure. *See State v. Murphy*, 545 N.W.2d 909, 917 (Minn. 1996) (length of conduct, multiple victims, invasion of the victims' homes, and concealment of crime); *State v. Finbraaten*, 363 N.W.2d 473, 474–75 (vulnerability of elderly victim and violation of victim's trust), *review denied* (Minn. Apr. 18, 1985).

We have no difficulty holding that the district court did not abuse its discretion by imposing the greater-than-double durational departure and sentencing Collum to a 36-month stayed prison term.

**Affirmed.**