**STATE of Minnesota, Respondent,**

v.

**Tiron Patrick BEANE, Appellant.**

**No. A12–2222.**

Court of Appeals of Minnesota.

Dec. 30, 2013.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Chief Judge CLEARY, presiding Judge; KIRK, Judge; and SMITH, Judge.

## OPINION

SMITH, Judge.

■ We affirm appellant's count-one, first-degree-burglary and count-three, domestic-abuse convictions because (1) the district court did not abuse its discretion in admitting relationship evidence, (2) the district court did not err in its other rulings, and (3) sufficient evidence supports the convictions. We reverse appellant's count-two, first-degree-burglary conviction because one entry of an apartment without consent, followed by multiple assaults committed while in the apartment, supports only one first-degree burglary conviction. We remand for resentencing with direction to vacate the adjudication on count two, the burglary conviction, noting that the district court may impose a sentence for the domestic-assault conviction that was not previously sentenced.

## FACTS

During the predawn hours of April 13, 2012, after attending a party, appellant Tiron Patrick Beane and F.E. arrived at F.E.'s apartment in Brooklyn Center.

F.E. lived on the second floor of her building, in apartment 202, with her two young children and her mother, S.W. S.W.'s friend L.L. was also there. Beane was loud and woke up the children. While talking to F.E. in her bedroom, Beane became verbally and physically abusive, and the situation escalated into an assault that progressed from the bedroom to the hallway and into the kitchen. Beane held F.E. by the hair, punched her, hit her head against the kitchen wall, and hit her in the face with a coffee mug. S.W. intervened, stepping between Beane and F.E., while L.L. was in the living room trying to shield the children. S.W. got her arms around Beane's neck, allowing F.E. to break free. F.E. ran out of apartment 202 and down the hall to apartment 204, the home of her friend K.B.

K.B. let F.E. into apartment 204 and locked the door. Using K.B.'s phone, F.E. called 911. Beane, having broken free from S.W., kicked in the door to apartment 204, entered, and renewed his attack on F.E. As F.E. retreated to a bathroom, K.B.'s fiancee J.S. intervened, blocking Beane's path and telling him to leave the apartment. Beane threatened to kill J.S. and everyone else in the apartment. J.S. fled the apartment with K.B. and their daughter. Beane then turned his attention to F.E., hitting her with a towel bar he had torn from the bathroom wall.

F.E. fled back to her own apartment, number 202, but Beane followed and continued his attack. While F.E. was holding her 14–month old daughter, Beane picked up the glass top from a coffee table and threw it at them, causing the glass to shatter. He then kicked F.E. in the face, causing a blood clot in her eye. He ordered everyone in the apartment—F.E. and her two young children, S.W., and L.L.—to lie down on the ground, and told them he was going to kill them all. When

police arrived they found the door to F.E.'s apartment locked and were unable to force it open. After S.W. opened a second door to the apartment, the officers entered, found Beane standing in the living room, and arrested him.

Beane was charged with two counts of first-degree burglary with assault in violation of Minn.Stat. § 609.582, subd. 1(c) (2012), and one count of domestic assault in violation of Minn.Stat. §§ 609.101, subd. 2, .2242, subd. 4 (2012). The complaint describes the burglary-with-assault charges in reference to victims F.E. and J.S., but not with reference to the apartments entered. The state's trial theory was that both burglary charges were supported by the entry of K.B.'s apartment, number 204, and the assaults on F.E. and J.S. that occurred in that apartment. The state did not assert that Beane's pursuit of F.E. back into apartment 202 constituted a separate burglary. The state moved to admit evidence of Beane's prior, unreported assaults on F.E. The district court granted the motion over Beane's objection, and F.E. testified about those prior incidents. A jury convicted Beane of all three counts. For his conviction on the first count of first-degree burglary, the district court sentenced Beane to 108 months. For his conviction on the second count of first-degree burglary, the district court sentenced Beane to 48 months to be served consecutively. The district court did not impose a sentence for the domestic-assault conviction.

## ISSUES

I. Did the district court abuse its discretion by admitting the evidence of prior or unreported assaults?

II. Did the district court err by consecutively sentencing Beane on two first-degree-burglary convictions?

III. On remand, may the district court impose a sentence on the domestic-assault conviction?

IV. Do appellant's supplemental arguments have merit?

## ANALYSIS

### I.

Over Beane's objection, the district court admitted relationship evidence under Minn.Stat. § 634.20 (2012). The evidence consisted of F.E.'s testimony about two prior uncharged assaults Beane committed against her. F.E. testified that in February 2012 Beane took her cell phone and threatened to beat her before giving it back, and that in March 2012 he choked her until she passed out. The district court refused to allow testimony that one of the incidents was preceded by an argument over Beane's use of illegal drugs, but held that the assaults were "classic relationship evidence and that the legislature ... intends for this kind of evidence to come in." The court gave the jury a thorough cautionary instruction.

Beane argues that the district court erred by admitting F.E.'s testimony about the alleged prior assaults. He asserts that the evidence was more prejudicial than probative, that he was denied a fair trial as a result of its admission, and that his convictions must therefore be reversed. "We review for an abuse of discretion the district court's decision to admit evidence of similar conduct by the defendant against an alleged domestic-abuse victim under Minn.Stat. § 634.20." *State v. Lindsey,* 755 N.W.2d 752, 755 (Minn.App.2008) (citing *State v. McCoy,* 682 N.W.2d 153, 161 (Minn.2004)), *review denied* (Minn. Oct. 29, 2008). A defendant challenging a district court's decision to admit evidence must show that the decision was both erroneous and prejudicial.

*State v. Bartylla,* 755 N.W.2d 8, 20 (Minn. 2008). Evidence admitted under section 634.20 need not meet the clear-and-convincing standard required for admission of character or *Spreigl* evidence, but need only be more probative than prejudicial. *McCoy,* 682 N.W.2d at 161.

Reversal is not warranted because Beane has failed to show prejudice. He asserts that evidence of the March choking incident "was so prejudicial as to inflame the jury's passions against [him]," and complains that the testimony "made [him] seem to be a potential murderer." It is difficult for us to determine how evidence that Beane choked F.E. in March could have inflamed the jury's passions against him any more than what he did a month later, on the night he was arrested. On that night, Beane beat F.E. severely; repeatedly threatened to kill her; kicked down a door to pursue her into K.B.'s apartment; threatened to kill K.B., J.S., and their child and drove them from their home; tore a towel bar off the wall and used it as a weapon; pursued F.E. back to her own apartment; smashed a glass table top over F.E. and her toddler; and finally forced S.W., L.L., F.E., and F.E.'s two young children to lie on the floor while telling them he was going to kill them all. Although Beane asserts that "the prejudicial effect of [the relationship] evidence was overwhelming," we reject his assertion and conclude that the district did not commit reversible error by allowing F.E.'s testimony.

## II.

■ A person commits first-degree burglary if he enters a building without consent and commits a crime while in the building and (a) the building entered is an occupied dwelling, (b) the person possesses a dangerous weapon, or (c) the person assaults another while in the building.

Minn.Stat. § 609.582, subd. 1(a)-(c) (2012). Beane was charged with two counts of first-degree burglary with assault under subdivision 1(c) for entering apartment 204 without consent and assaulting J.S. and F.E. in that apartment. That an individual apartment within an apartment building may be considered a "building" under the burglary statute is well-established. *E.g., State v. Edwards,* 589 N.W.2d 807, 810–11 (Minn.App.1999) (treating apartment as building under the burglary statute), *review denied* (Minn. May 18, 1999); *see State v. Johnson,* 679 N.W.2d 378, 386 (Minn.App.2004) (bedroom within apartment not a "building" under burglary statute, but self-contained apartment is), *review denied* (Minn. Aug. 17, 2004); *cf. State v. McDonald,* 346 N.W.2d 351, 352 (Minn.1984) (burglary committed where defendant walked through part of store open to public, then entered area not open to public in effort to steal drugs).

■ Minnesota law generally prohibits double punishment in cases where a defendant's single course of conduct constitutes more than one offense. *See* Minn.Stat. § 609.035, subd. 1 (2012). First-degree burglary with assault involves two offenses, burglary and assault, in a single course of conduct. The general prohibition on double punishment would cause the assault charge to merge into the burglary charge. But section 609.035 and other statutes carve out a set of interrelated exceptions; their net effect is to permit a punishment of both the burglary and the assault in such cases. *See State v. Holmes,* 778 N.W.2d 336, 340–41 (Minn. 2010) (considering the statutory framework and concluding that when a burglary is elevated to first degree because the defendant committed a third-degree assault while in the building, defendant may be charged with and convicted of both first-degree burglary and third-degree assault). Thus a person who enters a building without consent and commits multiple

offenses while in the building may be charged with and convicted of burglary *and* each of the several offenses committed during the course of the burglary.

However, the question of whether a single burglarious entry coupled with multiple assaults may support multiple convictions of first-degree burglary was answered by the supreme court in *State v. Hodges*, 386 N.W.2d 709 (Minn.1986). Hodges, with accomplices, entered a dwelling occupied by two elderly women and their nurse. *Id.* at 710. One of the accomplices, armed with a knife, sexually assaulted the nurse. *Id.* Hodges was charged with one count of first-degree burglary of an occupied dwelling, one count of first-degree burglary with a dangerous weapon, and one count of first-degree burglary with assault. *Id.* The supreme court observed that "the multiple-victim exception clearly permits three *assault* convictions if a burglar assaults three different people after entering a house." *Id.* at 711 (emphasis added). The court went on to state:

> [T]he burglarious entry of one dwelling should justify only one burglary conviction. Under this approach, the commission of other crimes, such as assault or robbery, against the occupants of a dwelling after entry is made may be additionally punished with convictions and sentences on the basis of one extra conviction and sentence per victim of the other crimes, but only one burglary conviction would be allowed.

*Id.*

We find *Hodges* dispositive. Because both burglary charges involve one dwell-

ing, we therefore reverse Beane's second first-degree burglary conviction and remand to the district court for resentencing and the issuance of a new order of commitment.[1]

### III.

■ The state argues that, on remand, the district court should be given the opportunity to resentence Beane and that resentencing should include the opportunity to impose a sentence for the domestic-assault conviction.

The supreme court has held, as a matter of judicial policy, that Minnesota courts may not impose a more severe sentence after a case has been remanded for a new trial. *State v. Holmes*, 281 Minn. 294, 296, 161 N.W.2d 650, 652 (1968). The *Holmes* court cited with approval foreign cases in which courts had reasoned that forcing a defendant to risk receiving a greater sentence on remand would have a chilling effect on the exercise of postconviction rights. *Id.* at 299–304, 161 N.W.2d at 654–56. Seven years later, in a case where the defendant had been convicted of multiple crimes against each of three victims and sentenced to seven consecutive terms of imprisonment, the supreme court remanded for resentencing with the direction that (1) he could be sentenced for only one offense as to each victim, and (2) for each conviction sentenced on remand, the penalty could not be more severe than the penalty the district court had initially imposed

---

1. We observe that under *Hodges*, Beane could have been charged with an additional count of assault for each individual he assaulted in K.B.'s apartment. We also note that the multiple-victim exception may have supported additional assault charges for each of the victims he attacked or threatened while in F.E.'s apartment, and that those assaults were apparently aggravated by the presence of chil-

dren. Additionally, Beane's pursuit of F.E. back into her own apartment could potentially have supported a first-degree-burglary charge because this second entry was undoubtedly made without F.E.'s consent, and because the facts support the conclusion that Beane committed additional crimes against additional victims after this unconsented entry.

for that same conviction. *State v. Prudhomme*, 303 Minn. 376, 378–80, 228 N.W.2d 243, 245–46 (1975). The court held that to allow the imposition of greater sentences than those originally imposed would "violate the spirit of the *Holmes* case." *Id.* at 380, 228 N.W.2d at 246.

*Prudhomme* is distinguishable from the present case because in *Prudhomme* the district court was tasked, on remand, with resentencing the same convictions for which the initial sentences had been set aside. *Id.* Here, Beane was convicted of three offenses, but the district court imposed sentences for only two of the convictions. We have reversed one of the sentenced convictions, but the other two remain. On remand, the district court will face the task of imposing a new sentence where one conviction was previously sentenced and one was not. Under these unique facts, *Holmes* prohibits the imposition of an overall sentence greater than the aggregate of the previous sentences, and *Prudhomme* prohibits the imposition of a greater sentence for the previously sentenced conviction. But no authority prohibits the imposition of a sentence for a conviction that was not previously sentenced.

In *State v. LaTourelle* the supreme court held that when a defendant is convicted on more than one charge for the same course of conduct under facts where the no-multiple-sentences rule applies, the district court should adjudicate formally only on the conviction to be sentenced. 343 N.W.2d 277, 284 (Minn.1984). Then, if the adjudicated, sentenced conviction is later reversed or vacated for a reason that does not affect the unadjudicated conviction, the unadjudicated conviction can be formally adjudicated and a sentence imposed with credit for time already served. *Id.* Here, the district court could have formally adjudicated and imposed sentence on the two convictions we sustain because the domestic assault falls within the burglary exception to the no-multiple-sentences rule. Instead, the district court adjudicated and sentenced the two first-degree-burglary convictions, but did not adjudicate or sentence the domestic-assault conviction. On remand, the district court may follow the procedure described in *LaTourelle* as to the domestic-assault conviction, and is free to resentence the first-degree-burglary conviction we leave standing, provided that (1) any new sentence for the first-degree burglary conviction may not be more onerous than the original 108–month sentence for that conviction, (2) sentencing of the domestic-assault conviction must occur within the general sentencing framework for that conviction, and (3) the aggregate of the new sentences may not be more onerous than the original aggregate sentence of 156 months.

## IV.

Beane's pro se supplemental brief raises several issues. The majority were not raised below, including arguments about the admissibility of certain evidence, alleged defects in the chain of custody for items of physical evidence, and concerns about the state's failure to conduct DNA testing on blood found on certain items of physical evidence. The supplemental brief also raises a sufficiency-of-the-evidence claim, alleging essentially that testimonial evidence was not sufficient to prove that it was Beane who kicked K.B.'s door down because the state produced no forensic evidence directly connecting him with that act. We decline to consider these arguments because they were not raised to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996).

Beane also challenges the propriety of the multiple consecutive sentences im-

posed below, alleging that the district court based its sentencing decision on a mistaken calculation of his criminal history score. In view of our decision to remand for resentencing, we leave it to the district court to carefully consider the calculation of Beane's criminal history score.

■ Finally, defense counsel conceded in her closing argument that Beane assaulted F.E. Beane now asserts that counsel made that statement without his authorization and implies that the outcome would have been different had counsel not done so. We construe this as an ineffective-assistance-of-counsel claim based on the theory that counsel conceded Beane's guilt without his consent. A full reading of the closing argument establishes that counsel's statements reflect a tactical decision to concede, in the face of compelling evidence, allegations the jury would almost surely accept and to focus instead on persuading the jury that those facts related to the domestic-assault charge and not to the first-degree-burglary charges, because conviction on the former would result in a shorter sentence than conviction on the latter.

■ Counsel's exercise of tactical judgment generally will not support an ineffective-assistance claim. *State v. Buchanan,* 431 N.W.2d 542, 553 (Minn.1988). But the supreme court has held that the decision to concede guilt is for the defendant alone to make, and that when counsel concedes guilt without a defendant's consent counsel's performance is deficient and prejudice is presumed. *State v. Jorgensen,* 660 N.W.2d 127, 132 (2003) (citing *Dukes v. State,* 621 N.W.2d 246, 254 (Minn.2001)).

The record shows that Beane explicitly consented to the concession of guilt. Before closing arguments defense counsel asked Beane—on the record but outside the presence of the jury—whether he understood and consented to her strategy of conceding guilt as to the assault. Beane acknowledged that they had discussed the strategy, that he understood it, and that he freely and voluntarily agreed to it. Beane's consent to his attorney's concession of his guilt forecloses his ineffective-assistance-of-counsel claim.

## DECISION

We affirm the district court's decision to admit relationship evidence because Beane has not shown that admission of that evidence was prejudicial. We reverse the conviction on the second count of first-degree burglary because a single entry of a single dwelling without consent, followed by multiple assaults, supports only one first-degree burglary conviction. We remand to the district court with direction to vacate that conviction and resentence in a manner consistent with the guidelines set forth in this opinion.

**Affirmed in part, reversed in part, and remanded.**