*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0993**

State of Minnesota,
Respondent,

vs.

Joel Asiago Nyansikera,
Appellant.

**Filed March 30, 2015
Affirmed in part and remanded
Kirk, Judge**

Mower County District Court
File No. 50-CR-13-2437

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Megan Burroughs, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

On appeal from his convictions of first-degree burglary and second-degree assault,

appellant argues that (1) the evidence is insufficient to support his convictions and (2) the

district court erred by convicting him of two counts of first-degree burglary for the same criminal act. Appellant also raises several arguments in a pro se supplemental brief. We affirm appellant's convictions but remand to the district court to correct the warrant of commitment to reflect only one conviction of first-degree burglary.

## FACTS

In October 2013, respondent State of Minnesota charged appellant Joel Asiago Nyansikera with two counts of first-degree burglary and one count of second-degree assault. The complaint alleged that appellant broke down the door of N.D.'s apartment, entered her apartment, and struck N.D. with a three-foot-long section of banister railing.

Following a bench trial, the district court found appellant guilty of all three counts. The district court did not formally enter any convictions on the record, but sentenced appellant to 48 months in prison for one count of first-degree burglary and 21 months for the count of second-degree assault, to be served concurrently. The district court stated on the warrant of commitment that appellant was convicted of all three counts. This appeal follows.

## D E C I S I O N

### I. The evidence is sufficient to support appellant's convictions.

"We review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998). In assessing whether the evidence was sufficient to support a finding of guilt, this court "determine[s] whether the legitimate inferences drawn from the facts in the record would reasonably support the [factfinder's] conclusion that the defendant was

2

guilty beyond a reasonable doubt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). We assume that the factfinder believed the state's witnesses and disbelieved contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the finding of guilt if the factfinder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Appellant argues that the evidence is insufficient to support his convictions of first-degree burglary and second-degree assault because the state failed to prove beyond a reasonable doubt that the railing was a dangerous weapon. Under Minn. Stat. § 609.582, subd. 1(b) (2012), an individual is guilty of first-degree burglary if he "enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building" and "possesses, when entering or at any time while in the building, any of the following: a dangerous weapon, any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or an explosive." A person commits second-degree assault if he "assaults another with a dangerous weapon." Minn. Stat. § 609.222, subd. 1 (2012). The definition of a "dangerous weapon" includes "any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2012).

"When determining whether an object . . . is a dangerous weapon, the court must examine not only the nature of the object itself, but also the manner in which it was used." *State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997). "Some things that are not ordinarily thought of as dangerous weapons become dangerous weapons if so used." *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983). Minnesota appellate courts have found that numerous ordinary objects were dangerous weapons because of the way that the defendant used them, including a three-foot-long board used to beat a victim, a pool cue swung like a baseball bat, cowboy boots used to kick a victim's head and chest, and a beer bottle thrown at a victim's head. *See id.* (board); *State v. Upton*, 306 N.W.2d 117, 117-18 (Minn. 1981) (pool cue); *State v. Mings*, 289 N.W.2d 497, 497-98 (Minn. 1980) (cowboy boots); *State v. Cepeda*, 588 N.W.2d 747, 749 (Minn. App. 1999) (beer bottle).

Here, the record establishes that appellant used a hand railing in a way that was calculated or likely to produce death or great bodily harm. N.D.'s son, S.A., testified about appellant's persistent search in his own apartment and in front of N.D.'s apartment building for something to use as a weapon and that he heard appellant say, "I need to grab a weapon," before attempting to pull off a table leg. When that was unsuccessful, S.A. testified that appellant searched for a weapon in the bedroom before he went outside the apartment building and, after several attempts, successfully tore off a railing and then held it "like a baseball bat." S.A., N.D., and another witness, J.M., all testified that appellant was very drunk and they observed appellant swing the railing at N.D. and others multiple times, hitting N.D. in the hand. All three witnesses testified that N.D.'s hand was injured as a result of being hit by the railing, and the state introduced into

4

evidence a photo of N.D.'s injured hand that was taken by the police officers who responded to the 911 call. Finally, although appellant denied breaking off the railing or hitting N.D. with it, he acknowledged that the railing could cause bodily harm or kill someone.

Appellant contends that N.D.'s injury does not support the conclusion that the railing was a dangerous weapon because her injury was not severe. A court may consider the victim's injuries in determining whether an object constitutes a dangerous weapon, but that determination does not turn on the nature or severity of the victim's injury. *Basting*, 572 N.W.2d at 285. Here, the record establishes that N.D.'s injury on her hand was not severe. But appellant's repeated swinging of the railing "like a baseball bat" at N.D. and several others was likely to cause serious harm if he successfully made contact with one of the individuals. *See Upton*, 306 N.W.2d at 117-18 (concluding that evidence that the defendant's action of swinging a pool cue "like a baseball bat" and hitting the victim in the head, causing a severe cut, was sufficient to support his conviction of assault with a dangerous weapon). The manner in which appellant used the railing rendered it a dangerous weapon, whether or not he succeeded in causing severe harm.

Therefore, the evidence is sufficient to support appellant's convictions.

**II.     The district court convicted appellant of one count of first-degree burglary.**

Appellant argues that the district court improperly convicted him of two counts of first-degree burglary for the same criminal act. The state responds that the district court properly convicted appellant of only one count of first-degree burglary, but mistakenly stated on the warrant of commitment that appellant was convicted of both counts of first-

degree burglary. Thus, the state argues that this case should be remanded to the district court to allow it to correct the error in the warrant of commitment.

Under Minn. Stat. § 609.04, subd. 1 (2012), a defendant cannot be convicted of the same offense twice for the same act or course of conduct. *See State v. Hodges*, 386 N.W.2d 709, 710 (Minn. 1986). In *Hodges*, the Minnesota Supreme Court specifically held that "the burglarious entry of one dwelling should justify only one burglary conviction." *Id.* at 711; *see State v. Beane*, 840 N.W.2d 848, 853 (Minn. App. 2013) (reversing the defendant's second first-degree burglary conviction and remanding for resentencing based on *Hodges*), *review denied* (Minn. Mar. 18, 2014). Appellate courts "typically look to the official judgment of conviction . . . as conclusive evidence of whether an offense has been formally adjudicated." *State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999).

Here, the district court found appellant guilty of two counts of first-degree burglary in violation of Minn. Stat. § 609.582, subd. 1(b), (c) (2012). At the sentencing hearing, the district court did not formally enter any convictions. Instead, the district court stated, "I believe I'm only going to sentence on one count, one behavioral incident," and then imposed a sentence for one count of first-degree burglary and one count of second-degree assault. The fact that the district court only imposed a sentence for one count of first-degree burglary indicates that it did not intend to enter convictions for both counts of first-degree burglary. But because the district court stated on the warrant of commitment that appellant was convicted of both counts of first-degree

6

burglary, we remand to the district court to correct the warrant of commitment to reflect that appellant was convicted of only one count of first-degree burglary. *See id.*

### III.  Appellant's pro se arguments lack merit.

In his pro se supplemental brief, appellant argues that the evidence is insufficient to establish that he committed first-degree burglary. He contends that it is impossible for him to burglarize a building that he lived in with his girlfriend and children. He also argues that he was invited to N.D.'s apartment.

The testimony of J.M., N.D., and S.A. establishes that, although appellant was invited to be in N.D.'s apartment earlier in the day, N.D. withdrew her consent for him to be in the apartment. N.D. testified that appellant was invited to attend a party at her apartment but that she asked him to leave the apartment after he became disruptive. J.M. testified that N.D. closed and locked her apartment door after appellant left the apartment. None of the witnesses actually saw appellant kick down the door, but S.A. testified that he observed appellant run at the door several times and then heard a crack and something hit the floor. And both J.M. and N.D. testified that they heard loud bangs on the door before the door fell into the apartment and appellant was on the other side of the door as it fell. They both testified that they did not invite appellant into the apartment after N.D. told him to leave.

Further, we are not persuaded by appellant's argument that he could not have burglarized N.D.'s apartment because he lived in the apartment building. The fact that appellant lived in another apartment in the building does not give him the right to enter any of the individual apartments without permission. "That an individual apartment

within an apartment building may be considered a 'building' under the burglary statute is well-established." *Beane*, 840 N.W.2d at 852. Because the record shows that appellant did not have permission to enter N.D.'s apartment, the evidence is sufficient to establish that appellant committed first-degree burglary when he entered N.D.'s apartment while in possession of a dangerous weapon. *See* Minn. Stat. § 609.582, subd. 1(b), (c).

Finally, appellant argues that the district court failed to take into consideration the involvement of N.D.'s nephew in the incident. But appellant's counsel thoroughly questioned the witnesses during cross-examination about N.D.'s nephew's actions on the day of the incident. In addition, appellant testified at trial and explained his version of the events, including that N.D.'s nephew fought with him. The district court's guilty verdict indicates that it did not believe appellant's version of the events, and we defer to the district court's credibility determinations. *See State v. Kramer*, 668 N.W.2d 32, 38 (Minn. App. 2003) ("It is the province of the fact-finder to determine the weight and credibility to be afforded the testimony of each witness."), *review denied* (Minn. Nov. 18, 2003).

**Affirmed in part and remanded.**